# Richmond

## James T. Butler v. Commonwealth of Virginia, Division of Motor Vehicles.

April 26, 1949.

Record No. 3462.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

412

The opinion states the case.

*Irby Turnbull*, for the appellant.

*J. Lindsay Almond, Jr., Attorney General*, and *D. Gardiner Tyler, Jr., Assistant Attorney General*, for the Commonwealth.

STAPLES, J., delivered the opinion of the court.

The appellant, James T. Butler, complains of an order of the Circuit Court of Mecklenburg County which sustains certain action of the Commissioner of the Division of Motor Vehicles suspending for a period of twelve months the appellant's operator's license and registration certificates, and requiring him to surrender to the Commissioner his operator's license and *all* registration plates and registration certificates for all motor vehicles *issued in his name*. The order complained of was entered in a proceeding in the circuit court which reviewed the foregoing action of the Commissioner.

The proceeding before the Commissioner was had pursuant to the provisions of sections 18 and 19 of the "Virginia Motor Vehicle Safety Responsibility Act," Acts 1944, pages 591-592, (Michie 1948 Code Supplement, sections 2154(a18) and 2154(a19) ).

Section 18 provides for appropriate notice containing a statement of the charges to be heard, and the time and place of the hearing.

Section 19 provides as follows:

"Upon any reasonable ground appearing in the records of the Division, the Commissioner may, when he deems it necessary for the safety of the public on the highways of this State, and after notice and hearing as hereinbefore provided, suspend or revoke for a period not to exceed five years, and not reissue during the period of suspension or revocation, the operator's or chauffeur's license of any person who is a violator of the provisions of the Motor Vehicle Code, as amended; and he may suspend or revoke for a like period, and not reissue during the period of suspension or revocation, any or all of his registration certificates and registration plates for any motor vehicle."

The appellant's right to the *"review"* by the circuit court, as well as the "appeal" to this court, is conferred by section 21 of the Act, as amended by Chapter 469 of the Acts of 1948, (section 2154(a21) of Michie's 1948 Code Supplement), which is as follows:

"(a) Any person aggrieved by an order or act of the Commissioner requiring a suspension or revocation of his license or registration under the provisions of this act, may, within thirty days from the date of such order or act, file a petition in any court having criminal jurisdiction in the city, or county in which the petitioner resides for a review, but the commencement of such proceeding shall not suspend the order or act unless for good cause shown, a stay be allowed by the court pending final determination of the review.

"(b) No review shall lie in any case in which the revocation of the license or registration was mandatory except

to determine the identity of the person concerned when the question of identity is in dispute.

"(c) From the final judgment of any court, either (*sic*) the person who petitioned the court for a review, shall have an appeal as of right to the Supreme Court of Appeals of Virginia."

The appellant first challenges the validity of the order of the circuit court on the ground that the authority granted the motor vehicle commissioner to revoke his operator's license constitutes an unconstitutional delegation of legislative power. It is argued that the effect of the provisions of section 19, above quoted, is to vest in the Commissioner, an administrative officer, an arbitary and uncontrolled discretion, and the statute, therefore, runs counter to the principles enunciated in the case of *Thompson* v. *Smith*, 155 Va. 367, 154 S. E. 579, 71 A. L. R. 604, which involved the validity of an ordinance of the city of Lynchburg. The ordinance there in question provided that "The chief of police is authorized and directed to revoke the permit of any driver who, in his opinion, becomes unfit to drive an automobile on the streets of the city, * * *." We held this to be an unlawful delegation of arbitrary power, for the reason that "the policy of the law and the legal principles which are to control the action of the chief of police are not determined or determinable from the terms of the ordinance," and also because the action of the officer was not subject to any judicial review.

The conclusion reached in that case turned solely upon that interpretation of the provisions of the ordinance. The principles followed did not depart from those which have been generally recognized by the courts in cases of that type. But we expressly restricted the application of that rule to legislative enactments which contain no standards or guides by which the exercise of the regulatory power is to be governed but purport to vest in the officer an arbitrary and uncontrolled discretion. We held at the same time that legislation which does prescribe such standards or guides is not vulnerable to the objection there urged, even though

they are defined in general terms. On this subject we said:
"* * * In declaring the policy of the law and fixing the legal principles and standards which are to control in the administration of the law, general terms, which get precision from the technical knowledge or sense and experience of men and thereby become reasonably certain, may be used; and an administrative officer or bureau may be invested with the power to ascertain and determine whether the qualifications, facts or conditions comprehended in and required by such general terms exist, and whether the provisions of the law so fixed and declared have been complied with in accordance with the generally accepted meaning of the words." (155 Va., at page 381).

This brings us, therefore, to the consideration of the question whether the power conferred upon the motor vehicle, commissioner by section 19, *supra*, is so abritrary and uncontrolled as to contravene the principles established in the above case.

An examination of the section discloses the following controls or limitations upon the power of the Commissioner:

1. He must deem the suspension or revocation· of the operator's license "necessary for the safety of the public on the highways of this State."

2. The ground upon which the conclusion of the Commissioner is based,—that the safety of the public will be jeopardized unless the license is suspended,—must appear "in the records of the Division" of Motor Vehicles.

3. The ground of suspension must be "reasonable", both as to the necessity therefor and the duration thereof.

4. The Commissioner must grant a hearing and give notice of the time and place. The right of review by a circuit or city court of competent jurisdiction of the order of suspension or revocation is given to any person deeming himself aggrieved thereby.

5. An appeal to this court from the final judgment of the reviewing court is granted as a matter of right.

We think the foregoing provisions of the statute sufficiently guide and restrain the actions of the Commis-

sioner in the exercise of the power conferred. They also afford adequate protection in the form of judicial review to any person deeming himself aggrieved by any action of the Commissioner which purports to be in the exercise of such power. "* * * Government could not be efficiently carried on if something could not be left to the judgment and discretion of administrative officers to accomplish in detail what is authorized or required by law in general terms. Without this power legislation would become either oppressive or inefficient. There would be confusion in the laws, and in an effort to detail and particularize, the law would miss sufficiency both in provision and detail. * * *." (*Thompson* v. *Smith, supra*).

Under the general terms employed in the statute, it is clear that the cardinal principle or standard by which the exercise of the power conferred on the Commissioner must be guided and controlled is that the revocation of the operator's license and of the registration privileges must be "*necessary for the safety of the public on the highways of this State.*" If such action is not *reasonably necessary* to accomplish that purpose, then it must be concluded that the Commissioner has exceeded the authority conferred upon him.

Two hearings were had before the Commissioner, the latter being a rehearing requested by the appellant from the original order of the Commissioner suspending his operator's license and registration privileges. The original order was adhered to and confirmed pursuant to the rehearing. The appellant then filed a petition in the circuit court as provided in section 21 of the Act, *supra,* for a review of this action of the Commissioner.

The record contains transcripts of the testimony at both hearings before the Commissioner, as well as the evidence given at the trial in the circuit court.

The trial court was first confronted with the question as to the scope and extent of its jurisdiction to "review" the action of the Commissioner and the procedure to be followed. The Assistant Attorney General and the Common-

wealth's Attorney representing the Commissioner insisted that the review should be restricted to the record shown by the transcript of the evidence at the two Commissioner's hearings and to the question whether the order of suspension is supported by such evidence. The court concluded, however, that the case should be tried *de novo* and the issues submitted to a jury on the evidence adduced at the trial in the circuit court. The jury was given the following two instructions at the request of the Motor Vehicle Commissioner, but over the objection and exception of the appellant:

"Instruction No. 1. If you believe from a preponderance of the evidence that James T. Butler was convicted of violations of Motor Vehicle laws over a period of years of the same type of offenses that would manifest a disregard for Motor Vehicle Laws, then you should find for the Commonwealth.

"Instruction No. 2. If you believe from a preponderance of the evidence that James T. Butler is an habitual violator of the provisions of the Motor Vehicle Code or Motor Vehicle Laws, then you should find for the Commonwealth."

The giving of these instructions the appellant assigns as error.

The court also gave the following instructions at the request of the appellant:

"Instruction A. The court instructs the jury that it is their duty to determine whether or not the defendant's permit to drive an automobile should be suspended under the laws of this state. In the exercise of this duty, they should consider all the evidence introduced by the Department of Motor Vehicles and all the evidence introduced by the defendant, and thereupon find whether or not the defendant is a fit person to hold and enjoy the privileges of driving an automobile in this state.

"Instruction B. The court instructs the jury that they cannot properly find against the defendant unless they believe that the evidence establishes that the defendant is an habitual reckless or negligent driver or has committed such

serious violation of the motor vehicle laws of the state as will warrant the suspension of his permit.

"Instruction C. The court instructs the jury that the burden is on the Department of Motor Vehicles to prove to their satisfaction that the acts of the defendant are such as to justify the revocation of his right to drive an automobile. If they find that the Department has not borne this burden, they should find for the defendant."

The verdict of the jury was as follows: "We, the jury find in favor of the Commissioner of Motor Vehicles."

· [3] It thus appears that no consideration was given by the circuit court to the question whether it is *necessary for the safety of the public on the highways of this State* that the appellant's operator's license and franchise privileges be suspended, or the duration thereof, to bring about the required result. As we have pointed out, such necessity must exist before the Commissioner may lawfully exercise the suspension power.

The Attorney General insists that, if the records of the office of the Motor Vehicle Commissioner show that the appellant is an habitual violator of any of the provisions of the motor vehicle laws, this is all that is necessary to support the action of the Commissioner in any case. We cannot agree that this is true. In the first place, there is no standard to determine what constitutes an "habitual violator" of such laws, nor does the Attorney General's contention make it necessary that the particular provisions of law habitually violated are of such a nature that their violation will jeopardize the safety of the public on the highways, or that similar violations in the past have actually had such a result. For instance, a motor vehicle owner might habitually park his car longer than the time allowed by law. Such violations, however, could hardly be said ordinarily to impair the safety of the highways. The argument also leaves out of consideration the question of the duration of the suspension and whether the time fixed by the Commissioner is reasonably necessary to accomplish the legislative purpose. It likewise excludes any consideration

of the question whether the suspension of the *registration privileges* is necessary for the safety of others on the highways. The order of the Commissioner, in this case, required the appellant to surrender his license tags and registration certificates covering all his motor vehicles. The effect is to prevent him from hiring chauffeurs to operate his vehicles during the suspension period.

The appellant is charged with ten violations of the speed laws between August 28, 1942, and December 26, 1947. It appears from the undisputed testimony that three of the violations occurred when the lawful speed limit was thirty-five miles an hour; two of these were for driving at the rate of forty-five miles and one at fifty miles per hour. Of the other convictions, one was for driving fifty-five miles per hour, four additional ones were for driving sixty miles an hour, and one was for driving sixty-five miles per hour. Though it was not included in the charge against him, it appears that appellant was also convicted of speeding at the rate of about ninety miles per hour, but he testified that the car at that time was being driven by a companion, and that the appellant himself was being pursued by the occupant of another car who had just threatened his life. He claimed that the high speed was employed in an effort to escape his would-be assassin. His statement that he was being so pursued was corroborated by the officer who prosecuted the charge against him.

The appellant also testified that he had driven his car and one owned by the Butler Lumber Company a distance of over 300,000 miles from November, 1941, to March, 1948, and that prior to August 28, 1942, he had been driving for more than ten years and had never been convicted of the violation of any traffic law. It further appears from his uncontradicted testimony that, during the entire seventeen years in which he had been driving an automobile, neither he nor any other person has sustained any physical injury as a result of his operation of motor vehicles; that he has had only two minor accidents, and the total damage done to the cars of others was not over $200 and to his

own car not over $150; that he carried liability insurance, and his insurance carrier investigated these accidents and concluded that he was not liable for the injuries to the other cars and no claim for damages was ever paid to either of their owners.

The appellant claimed that some of the trips on which he exceeded the speed limit were in prosecution of war work which his company had undertaken.

██ In view of the evidence, which has been briefly summarized, we think instructions one and two, *supra*, should not have been given. In fact, we think the statute contemplates that the trial court should hear the matter without a jury, as contended by the Attorney General. The question of the conclusion to be drawn from the facts should be determined by the judge. The proceeding provided by the statute is more akin to a suit in equity than an action at law. It provides that *"an appeal"* shall lie as a matter of right to the Supreme Court of Appeals. The testimony before the Commissioner should be considered along with any additional evidence adduced in the trial court.

The trial court should hear only such additional evidence as relates to the question whether it is necessary "for the safety of the public on the highways" to revoke the operator's license and also the license plates and registration certificates.

██ In considering the reasonableness of the action of the Commissioner in revoking the appellant's operator's license and registration privileges, it is important to bear in mind that such revocations are not intended as a punishment to the operator of the car, but are designed solely for the protection of the public in the use of the highways. The appellant presumably has had appropriate punishment meted out to him in each case at the time of his several trials and convictions. As said by Mr. Justice Eggleston, in *Prichard* v. *Battle*, 178 Va. 455, 462, 17 S. E. (2d) 393, "The question as to whether the revocation of a license because of an act for which the licensee has been convicted or because of the conviction itself is an added punishment

has frequently been before the courts. The universal holding is that such a revocation is not an added punishment, but is a finding that by reason of the commission of the act or the conviction of the licensee, the latter is no longer a fit person to hold and enjoy the privilege which the State had theretofore granted to him under its police power. The authorities agree that the purpose of the revocation is to protect the public and not to punish the licensee." See also, *Hannabass* v. *Ryan*, 164 Va. 519, 180 S. E. 416; *Commonwealth* v. *Ellett*, 174 Va. 403, 4 S. E. (2d) 762; *Anglin* v. *Joyner*, 181 Va. 660, 26 S. E. (2d) 58.

The appellant has not been convicted of any act for which the statute requires a revocation of his operator's license.

 Upon the record as presented to us, there were three questions which should have been reviewed by the circuit court:

First: Whether the evidence is sufficient to sustain the conclusion of the Commissioner that the appellant's operator's license should be suspended.

Second: If the evidence is held to be sufficient to sustain that conclusion, whether, in view of the fact that the appellant during his seventeen years of driving has never had a serious accident or inflicted a personal injury either upon himself or any other motorist by the operation of a motor vehicle, it is necessary that the license should be suspended for a period of *twelve months*. The principal complaint of the Commissioner, as expressed by the Attorney General, is that the evidence discloses an habitual disregard of any obligation to conform to the speed laws of the State. Therefore, under these circumstances, the principal question for consideration would seem to be whether a shorter period of suspension would be sufficient to impress upon the appellant the importance of observing these laws and render him fully cognizant of the consequences of any future violations by him.

Third: Whether it is "necessary for the safety of the public on the highways of this State" also to revoke and

suspend the license plates and registration certificates of the appellant. We think the proper interpretation of the statutory provision authorizing this action is that it was intended solely for use in cases where the evidence indicates that, in the absence of such revocation, the motorist whose operator's license is being suspended will nevertheless continue to operate his motor vehicle or vehicles without such license in violation of the law. We conclude, therefore, that, should the circuit court find that there is no evidence from which a reasonable inference can be drawn that the appellant will continue to operate or drive his motor vehicles during the period of suspension of his operator's license (if same is suspended), then the statute cannot be said to justify the action of the Commissioner in also suspending and revoking the license plates and registration certificates.

For the reasons stated, the order of the circuit court is reversed and the cause is remanded for such further proceedings, not inconsistent with the views expressed in this opinion, as the court may be advised.

*Reversed and remanded.*