380 P.2d 136

**Lorene SCHECTER and Robert Palmer, Appellants,**

**v.**

**Clyde KILLINGSWORTH, Superintendent, Motor Vehicles Division, and Edwin F. Cates, Director of Financial Responsibility Section, Motor Vehicles Division, Appellees.**

**No. 7533.**

Supreme Court of Arizona.

En Banc.

March 27, 1963.

Cantor & Ely, by Herbert L. Ely, Phoenix, for appellants.

Robert W. Pickrell, Atty. Gen., John T. Amey and Walter O. Holm, and Rad L. Vucichevich, Asst. Attys. Gen., Phoenix, for appellees.

Stockton, Aldrich & Hing, Phoenix, Attorneys for American Mutual Insurance Alliance, as amicus curiae.

Gust, Rosenfeld & Divelbess, Phoenix, for National Association of Independent Insurers, as amicus curiae.

Jennings, Strouss, Salmon & Trask, Phoenix, for Ass'n of Casualty and Surety Companies, as amicus curiae.

Wallace W. Clark, Phoenix, Charles C. Collins, Cornelius R. Gray, Washington, D. C., Joseph H. Braun, Hugh Neill Johnson, Robert G. Corbett, Chicago, Ill., for American Automobile Ass'n, Inc., and Arizona Automobile Ass'n, Inc., as amicus curiae.

MOLLOY, Superior Court Judge.

This is an appeal from a dismissal in the Superior Court of an application for a writ of prohibition, by which appellants sought to prohibit the Superintendent of the Motor Vehicle Division and the Director of the Financial Responsibility section from enforcing the provisions of A.R.S. § 28–1142, insofar as this section requires the

Superintendent to suspend the driver's license of the appellant Palmer and the owner's registration certificate of the appellant Schecter.

According to the stipulated facts in the lower court, the appellants Schecter and Palmer were the owner and driver, respectively, of a motor vehicle which was involved in a collision with another automobile in the City of Phoenix, Arizona, on March 18, 1961. The collision resulted in damage to both vehicles. At the time of the accident neither of the appellants was covered by liability insurance. Subsequent to the accident, the Superintendent of the Motor Vehicle Division determined that security in the sum of $425.00 should be posted in order to avoid the suspension provisions of A.R.S. § 28–1142.[1]

The petition for a writ of prohibition alleges that the subject statute is unconstitutional for various reasons. A motion to dismiss the petition was filed by the respondents, alleging as grounds that the lower

---

1. Section 28–1142. Security required following accident; exceptions

"A. The superintendent shall, within sixty days after the receipt of a report of a motor vehicle accident within this state which has resulted in bodily injury or death or damage to the property of any one person in excess of one hundred dollars, suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident, or, if the operator is a non-resident, the privilege of operating a motor vehicle within this state, or, if the owner is a non-resident, the privilege of

the use within this state of any motor vehicle owned by him, unless such operator or owner or both shall deposit security in a sum which is sufficient in the judgment of the superintendent to satisfy any judgment or judgments for damages resulting from the accident as may be recovered against the operator or owner. Notice of the suspension shall be sent by the superintendent to the operator and owner not less than ten days prior to the effective date of the suspension and shall state the amount required as security."

court was "without jurisdiction to proceed further * * *" for the reason that A.R.S. § 28–1142 makes suspension of the license and registration mandatory under the circumstances stipulated. The motion to dismiss was granted and judgment was entered denying and dismissing the petition on the merits, and holding that A.R.S. § 28–1142 is constitutional.

In this appeal the appellants contend that the statute is unconstitutional because it violates the due process and equal protection clauses of the State and Federal Constitutions, and because it is an unlawful delegation of legislative and judicial authority.

The statute under attack provides, in substance, that the driver or owner of a vehicle involved in an accident, if not covered by a liability policy in the required amount, must, in order to avoid a suspension of driver's license and owner's registration certificates, cause to be posted with the Superintendent security in such amount as in the judgment of the Superintendent is sufficient to satisfy any judgment for damages which may result from the accident.[2]

The appellants contend that the statute makes an arbitrary and unreasonable distinction between uninsured drivers and owners who are involved in an accident and uninsured drivers and owners who are not involved in an accident, thus denying equal protection of the laws to those who happen to be involved in a motor vehicle accident.

The appellants further contend that the statute is in violation of procedural due process because it requires the suspension of the right to operate a motor vehicle on the public highways without a prior hearing, of which proper notice is given. They also argue that the statute violates substantive due process in that there is no legitimate relationship between the statute and the promotion of public health, safety and welfare. Finally, it is contended that there is an unconstitutional delegation of judicial and legislative power in giving to the Superintendent power to determine the amount of security to be posted.

As to two of the above contentions, the appellees interpose the procedural objection that the matter was not raised in the trial court and therefore cannot be raised on appeal. The two contentions singled out for this rejoinder are the attack made upon the failure of hearing, and notice of hearing, prior to the suspension of driving privileges, and the contention that there is an unlawful

2. In an amendment effective after the occurrence giving rise to this litigation, there was added to Section 28–1142 a requirement that proof of future financial responsibility be made to avoid the suspension provisions of the act. Proof can be made by filing an insurance policy or a bond, or by depositing cash or securities. A.R.S. Section 28–1142, subd. A (Supp. 1962).

delegation of power to the Superintendent of Motor Vehicles.

■ It is, of course, true that ordinarily this Court will not consider matters not raised in the lower court, see City of Yuma v. Evans, 85 Ariz. 229, 336 P.2d 135 (1959).

■ An examination of the record, however, reveals that in the petition for writ of prohibition, there is expressly urged as a reason why the writ should be granted the decision of People v. Nothaus, 147 Colo. 210, 363 P.2d 180 (1961). In this decision, the Supreme Court of Colorado declared a similar statute unconstitutional for the reasons, among others, that the statute did not provide for a proper hearing, nor notice thereof, and that there was an unconstitutional delegation of authority under the act. Considering the fact that appellants' petition was denied in the lower court for the reason that the statute in question is constitutional, we feel that the contentions of the appellants, on all four grounds, are properly before this Court.

This Court has benefited from an *amicus curiae* brief filed by the American Automobile Association, Inc., and the Arizona Automobile Association, Inc., which sets forth in some detail the history of Financial Responsibility Acts similar to that now before the Court. Our act is based upon the Financial Responsibility Act of the Uniform Vehicle Code.

In its early form, the uniform act provided for mandatory suspension of driving permits and vehicle registrations of persons found guilty of serious violation of motor vehicle laws and of persons against whom unsatisfied judgments are outstanding. Under this act, before a person whose license is suspended for violation of motor vehicle laws can again obtain a driving permit or registration, he must give proof of financial responsibility in the form of an insurance policy, bond, or deposit of cash or securities. Similarly, before the person whose license is suspended for an unsatisfied judgment can regain a permit to drive or register his car he must make provision for payment of the judgment and file proof of financial responsibility. These provisions, as enacted in this state (now Sections 28–1161 to 28–1178 A.R.S.), were held constitutional in State ex rel. Sullivan v. Price, 49 Ariz. 19, 63 P.2d 653, 108 A.L.R. 1156 (1937).

Experience under this type of statute showed that many of the financially irresponsible drivers against whom its provisions were directed were unaffected by the Act. Claimants were reluctant to undergo the expense required in obtaining the necessary judgment against the financially irresponsible offending motorist. Thus, financial irresponsibility worked to protect a motorist from statutes designed to bar him from the road because of his irresponsibility.

A more recent type of financial responsibility laws, of which A.R.S. §§ 28–1141 to 28–1148 are typical, provides for the suspension of driving permits and vehicle registrations of uninsured motorists involved in accidents with certain exceptions inapplicable here unless security for possible damages is deposited with the Superintendent. This type of statute has been enacted in forty-nine states and the District of Columbia, and has been upheld against constitutional attack in many of these jurisdictions, Franklin v. Scurlock, 224 Ark. 168, 272 S.W.2d 62 (1954); Escobedo v. State Department of Motor Vehicles, 35 Cal.2d 870, 222 P.2d 1 (1950) (driving permit held to be "right"); Larson v. Warren, 132 So. 2d 177 (Fla.1961); Doyle v. Kahl, 242 Iowa 153, 46 N.W.2d 52 (1951) (driving permit held to be "privilege"); Ballow v. Reeves, 238 S.W.2d 141 (Ky.1951); Sharp v. Department of Public Safety, 114 So. 2d 121 (La.App.1959); Larr v. Dignan, 317 Mich. 121, 26 N.W.2d 872 (1947) (driving permit held to be "privilege"); Hadden v. Aitken, 156 Neb. 215, 55 N.W.2d 620, 35 A.L.R.2d 1003 (1952) (driving permit held to be "privilege"); Rosenblum v. Griffin, 89 N.H. 314, 197 A. 701, 115 A.L.R. 1367 (1938) (driving permit held to be "privilege"); Heart v. Fletcher, 184 Misc. 659, 53 N.Y.S.2d 369 (1945) (driving permit held to be "privilege"); Berberian v. Lussier, 87 R.I. 226, 139 A.2d 869 (1958) (driving permit held to be "right"); Gillaspie v. Department of Public Safety, 152 Tex. 459, 259 S.W.2d 177 (1953) (driving permit held to be "privilege"); State v. Stehlek, 262 Wis. 642, 56 N.W.2d 514 (1953) (driving permit held to be "privilege"). In one state the uniform act has been held unconstitutional, People v. Nothaus, 147 Colo. 210, 363 P.2d 180 (1961).

As indicated, a number of these decisions are based upon the theory that the granting of a driver's license or a certificate of registration permitting a vehicle to use the public highways is the granting of a "mere privilege". Under the reasoning adopted by these decisions, inasmuch as the granting of such a "privilege" was under the condition that the same might be revoked if there was an accident when there was no insurance, and inasmuch as this condition was "accepted" by applying for a driver's license or registration certificate, there could be no complaint by such persons when such a license or registration was suspended or revoked in accordance with the condition.

This Court, on a previous occasion, adopted similar reasoning in rejecting a contention that the revocation of a drivers license was in violation of due process. In Goodwin v. Superior Court, 68 Ariz. 108, 201 P.2d 124 (1948) we said:

"A complete answer to this contention is that property rights are not here involved. We quote from Blashfield's

Cyclopedia of Automobile Law and Practice, § 580: '* * * A license to operate a motor vehicle is not a contract or property right, but a mere privilege, the enjoyment of which depends upon compliance with conditions prescribed by the state and is subject to its control.'" 68 Ariz. at 115, 201 P. 2d at 128.

■ The appellants have asked this Court to re-examine this reasoning, and, after so doing, we have come to the conclusion that we cannot reaffirm the reasoning of the Goodwin case expressed above. In this day, when the motor vehicle is such an important part of our modern day living, when the use of the vehicle is so essential to both a livelihood and the enjoyment of life, this Court recognizes that the use of the public highways is a right which all qualified citizens possess, subject, of course, to reasonable regulation under the police power of the sovereign. We consider applicable the following statement by the Rhode Island Court in Berberian v. Lussier, supra:

"The use of the automobile as a necessary adjunct to the earning of a livelihood in modern life requires us in the interest of realism to conclude that the right to use an automobile on the public highways partakes of the nature

of a liberty within the meaning of the constitutional guarantees of which the citizen may not be deprived without due process of law." 139 A.2d at 872.

See also Escobedo v. State Department of Motor Vehicles, supra.

Our conclusion requires us to consider, as did the Berberian and Escobedo decisions, all of the contentions raised by the appellants, from the standpoint that it is a right and not a "mere privilege" which has been suspended in this case.

■ The Financial Responsibility Act has for its principal purpose the protection of the public using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons. It accomplishes the objective by requiring proof of financial responsibility by those involved in an accident, either by a showing of insurance which covers the accident, or by requiring a bond or deposit of cash or securities. It may, as incidental purposes and effects, because of the threat of loss of driving rights following an uninsured accident, (1) encourage operators of motor vehicles to obtain liability insurance,[3] and (2) encourage drivers to drive more carefully. Because the uninsured motorist can avoid the adverse effects of the statute without obtaining insurance, and without improving his driving

---

3. Encouraging more widespread liability insurance coverage appears to be a principal policy of the 1961 amendment to the act.

practices (i. e. by putting up security—here $425.00—or by obtaining a release from the injured party, or an agreement for payment of damages in installments) we cannot consider either the encouragement to obtain insurance or the improvement of safety conditions on the highway to be primary objectives of this law.

■ It is well recognized that the social objective of preventing financial hardship and possible reliance upon the welfare agencies of the state is a permissible goal of police power action. Home Accident Ins. Co. v. Industrial Commission, 34 Ariz. 201, 269 P. 501 (1928); Berberian v. Lussier, supra; Hadden v. Aitken, supra; Rosenblum v. Griffin, supra.

The appellant, however, contends that the Financial Responsibility Act is a deprivation of equal protection of law, because it applies only to uninsured drivers who have been so unfortunate as to have had an accident, and does not apply to uninsured motorists who have not.

■ The guarantee of equal protection of the law does not prevent reasonable classification:

"All discrimination or inequality is not forbidden. * * * a statute may be allowed to operate unequally between classes if it operates uniformly upon all members of a class, provided the classification is founded upon reason and is not whimsical, capricious, or arbitrary." Schrey v. Allison Steel Mfg. Co., 75 Ariz. 282, 286, 255 P.2d 604, 606 (1953).

"Thus both classification and discrimination or distinction may be made in a law, provided the discrimination or distinction has a reasonable foundation or rational basis and is not entirely arbitrary. * * * Inequality, to have the effect of invalidating a law, 'must be arbitrary, unreasonable, oppressive, and not properly within the wide field of choice allowed to the legislature. * * *'" Valley Nat'l Bank v. Glover, 62 Ariz. 538, 555; 159 P.2d 292, 299 (1945).

We need not delve into appellant's argument that "there is absolutely no correlation between an individual involved in an automobile accident and his ability to drive safely," because we have indicated that the promotion of highway safety is not the primary objective of this particular law.

■ Certainly one who has been involved in an accident is more likely to have judgment rendered against him than one who has not. Singling out uninsured motorists who have had accidents as the class to whom this law applies is not arbitrary, unreasonable, or oppressive.

The appellants next contend that the act fails to provide procedural due process because it gives no opportunity for a hearing

prior to any action by the Superintendent to suspend their license and registration. Appellants' arguments on the question of a hearing raise questions both as to the time at which a hearing must be provided, and as to the scope of the matters that must be considered at the hearing.

The Financial Responsibility Act contains two provisions for hearing. It requires that the Superintendent provide hearings upon request of persons aggrieved by his orders under the act.[4] It further provides that persons aggrieved by an order or act of the Superintendent under the statute, may, within ten days after notice thereof, bring action for a trial *de novo* in the Superior Court to determine whether the order or act is lawful and reasonable.[5] If these hearings are timely under constitutional principles, and permit consideration of the proper matters, appellants' objection to lack of hearing is without merit.

Several courts, in considering their similar statutes, have determined that there is no requirement for a hearing prior to the administrative order suspending driving privileges, and have justified delay in hearing until after action by the administrative official on the basis of a "compelling public interest" which demands immediate action.[6] However, we are not convinced that a compelling public interest which requires immediacy really exists since the money or bond deposited under the terms of the statute may remain on deposit for years while the liability of the depositor is under litigation.

Nor do we think our legislature intended this. While there is some ambiguity in the wording of the subject legislation, this Court believes it is implied in this statute that, when requested, an aggrieved person shall have an administrative hearing before the suspension order becomes effective.

■ Where differing constructions of a statute are possible, it is our duty to construe it in such a manner that it will be constitutional, State v. A. J. Bayless Markets, Inc., 86 Ariz. 193, 342 P.2d 1088 (1959).

4. Section 28–1122. Superintendent to administer chapter; appeal to court
   A. The superintendent shall administer and enforce the provisions of this chapter and may make rules and regulations necessary for its administration and shall provide for hearings upon request of persons aggrieved by orders or acts of the superintendent under the provisions of article 3 of this chapter. * * *

5. Section 28–1122. Superintendent to administer chapter; appeal to court * * *

   B. Persons aggrieved by an order or act of the superintendent under the provisions of article 3 of this chapter, may, within ten days after notice thereof, file a petition in the superior court of the county in which the person resides for a trial de novo to determine whether the order or act is lawful and reasonable. * * *

6. E.g. Escobedo v. State Department of Motor Vehicles, 35 Cal.2d 870, 222 P.2d 1 (1950); Berberian v. Lussier, 87 R.I. 226, 130 A.2d 869 (1958).

It is to be noted that A.R.S. § 28–1122, subd. A provides that persons aggrieved under the Act may have a hearing before the Superintendent "upon request". A.R.S. § 28–1142, subd. A provides, in part:

"Notice of the suspension shall be sent by the superintendent to the operator and owner not less than ten days prior to the effective date of the suspension * * *."

A.R.S. § 28–1122, subd. B provides:

"Persons aggrieved by an order or act of the superintendent under the provisions of article 3 of this chapter, may, *within ten days after notice thereof*, file a petition in the superior court of the county in which the person resides for a *trial de novo* to determine whether the order or act is lawful and reasonable. The filing of a petition shall not suspend the order or act of the superintendent unless a stay thereof shall be allowed by a judge of the court pending final determination of the matter. The court shall summarily hear the petition and may make any appropriate order or decree." (Emphasis added)

If a request for a hearing, as permitted by A.R.S. § 28–1122, subd. A, by persons aggrieved by an order of suspension does not have some effect upon the suspension order, notice of which is given only ten days prior to its effectiveness, time allow-

ances are intolerable from a practical standpoint. It would mean that a person would have to request an administrative hearing, receive such, and appeal from same, all within a period of ten days after notice of the order.

It seems much more reasonable to infer that the request for a hearing was intended to toll the effective date of the suspension order, and that after the administrative ruling and notice thereof, a person would have ten days in which to seek review in the superior court.

Also it is to be noted that the Statute (A.R.S. § 28–1122, subd. B) provides that the filing of the petition in the superior court shall *not* suspend the order of the superintendent, leaving room for the construction that the request for a hearing contemplated by the preceding sub-section does have this effect.

Accordingly, giving these various provisions the only meaning that would, in our view, render the Statute constitutional, we hold that the administrative hearing provided by A.R.S. Section 28–1122, subd. A must, if requested, be conducted prior to the effective date of an order of suspension under the act.

We turn now to the scope of the matters that must be considered at the hearing. The record does not show that the appellants initiated proceedings to obtain either of the hearings permitted under A.R.S. §

28–1122. Nevertheless, it is apparent that one of their principal objections to the statute is that no hearing on the issue of culpability or negligence is provided. The appellees contend that the act does not contemplate a hearing on this issue, nor is one constitutionally required.

In Escobedo v. State Department of Motor Vehicles, 35 Cal.2d 870, 222 P.2d 1 (1950), the California Supreme Court indicated that under their similar statute, a deposit of security would be required only of those against whom, in the opinion of the department, a judgment might be recovered. Since recovery of a judgment depends on culpability, an administrative determination of culpability was indicated by the statute, in the opinion of that court.

Other courts have determined that the question of culpability is not involved in any way in either the administrative hearing or in the trial on appeal. Franklin v. Scurlock, supra; Hughes v. Department of Public Safety, 79 So.2d 129 (La.App.1955).

· It is our view that the Escobedo decision more nearly interprets correctly the legislative intent. However, we do not mean to say that the issue of culpability presented in determining the amount of security is the same as that which would be presented at a civil trial seeking to fix the motorist's liability.

■ The statute's requirement of security is based, not upon the establishment of negligence, but upon the standard that, in the opinion of the administrative official, a judgment *may* be recovered against the motorist. Thus, the superintendent need not decide on the basis of ·conflicting evidence whether a motorist was in fact, culpable, but must determine if there is any reasonable possibility that a judgment will be recovered against him and the amount thereof. Whether there ·is such a reasonable possibility is a finding that must be made by the superintendent only after an administrative hearing, if requested. Furthermore, this finding is subject to judicial review under A.R.S. § .28–1122, subd. B.

■ The failure of the statute to provide for a full-scale ·hearing on the issue of culpability does not violate the due process and equal protection clauses of either the State or Federal Constitutions. The appellants admit in their brief that this state could, as was done in Massachusetts, make it mandatory that all motorists have liability insurance. This seems to be the law, In re Opinion of the Justices, 251 Mass. 569, 147 N.E. 681 (1925); Brest v. Commissioner of Insurance, 270 Mass. 7, 169 N.E. 657 (1930); Ex parte Poresky, 290 U.S. 30, 54.S.Ct. 3, 78 L.Ed. 152 (1933)

■ If, as a matter of social policy, a state may require all motorists to obtain.. security in the form of insurance, against the remote possibilty of a judgment arising out of some future accident, a fortiori, it ·

can require posting of security by those motorists who have been involved in an accident, and against whom, as an administrative finding, a judgment may be recovered. Cf. Ballow v. Reeves, 238 S.W.2d 141 (Ky. 1951). The question in reality is one of reasonableness of the class to which the legislation applies. Here the class is comprised of those against whom the reasonable possibility of recovery of a judgment exists, and we have found this to be a reasonable classification.

The appellants argue that the statute violates substantive due process because it does not accomplish its purpose. This argument is based on the supposition that the purpose of the act is to encourage motorists to obtain liability insurance, and statistics are cited in appellants' brief, to the effect, that the percentage of insured motorists compared with uninsured motorists has decreased in recent years from 85% in 1957 to 76.9% in 1960.

Statistics given by the appellees in their brief indicate that prior to the adoption of the act in 1951, the percentage of insured motorists might have been approximately 30%.

In no event could we consider these figures, given to us only in briefs of counsel, to be grounds for invalidating a statute passed under the police power of the state. Such statutes are presumed to be constitutional. State Board of Technical Registra-tion v. McDaniel, 84 Ariz. 223, 326 P.2d 348 (1958).

Further, these figures have no bearing whatsoever upon whether or not this law was effective in achieving its primary purpose—the providing of security against uncompensated damages arising from operation of motor vehicles on our highways.

Appellants' final contention is that the act is an unconstitutional delegation of judicial and legislative power to the superintendent. Prior decisions of this Court have declared that similar powers vested in administrative bodies are "quasi-judicial" in character, rather than "judicial" and that their delegation to other than a duly constituted court does not violate separation of power concepts embedded in our State Constitution. Batty v. Arizona State Dental Board, 57 Ariz. 239, 112 P.2d 870 (1941); and State Board of Technical Registration v. McDaniel, supra.

A statute does not unconstitutionally delegate legislative power if it contains reasonably definite standards which govern the exercise of the power, and if procedural safeguards in the nature of a right of review are provided, Davis, Administrative Law Treatise Section 2.10 (1958); Butler v. Commonwealth, 189 Va. 411, 53 S.E.2d 152 (1949).

In Southwest Engineering Co. v. Ernst, 79 Ariz. 403, 291 P.2d 764 (1955) this Court said:

**286**

·"We note also a distinct modern tendency to be more liberal in the granting of discretion in the administration of laws in fields where the complexities of economic and governmental conditions have increased, particularly where it is impractical to lay down a comprehensive rule. * * * If the law provides a defined course of conduct upon the occurrence or determination of an occurrence of a particular condition or state of facts, even though that determination is dependent upon an evaluation in the nature of a deduction from facts, there is neither an unconstitutional delegation of power nor is the Act so indefinite and uncertain that it can be held to be invalid." 79 Ariz. at 415, 419, 291 P.2d at 772, 775.

In this case such a standard is provided. Security is required,

"* * * in a sum which is sufficient in the judgment of the superintendent to satisfy any judgment or judgments for damages resulting from the accident as may be recovered against the operator or owner." A.R.S. § 28–1142.

Moreover, as we have indicated, adequate provision for judicial review is made in A.R.S. § 28–1122, subd. B. Similar acts have been upheld against attack on the grounds of unconstitutional delegation of power in Escobedo v. State Department of Motor Vehicles, 35 Cal.2d 870, 222 P.2d 1; Hadden v. Aitken, 156 Neb. 215, 55 N.W.2d 620, 35 A.L.R.2d 1003 (1952); Garford Trucking v. Hoffman, 114 N.J.L. 522, 177 A. 882 (1935); State v. Stehlek, 262 Wis. 642, 56 N.W.2d 514 (1953).

We, therefore, find this contention to be without merit.

The judgment of the trial court is affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

NOTE. Justice JENNINGS, having disqualified himself, the Honorable JOHN F. MOLLOY, Judge of the Superior Court of Pima County, Arizona, was called to sit in his stead and participate in the determination of this appeal.