428 P.2d 98

Oscar SANDOVAL and Financial Indemnity Company, Appellants and Cross-Appellees,

v.

Chester A. CHENOWETH, Appellee and Cross-Appellant.

No. 7890–PR.

Supreme Court of Arizona.

In Banc.

May 25, 1967.

Rehearing Denied July 6, 1967.

O'Connor, Anderson, Westover, Killingsworth & Beshears, by John P. Otto, Phoenix, for appellants and cross-appellees.

Gibbons, Kinney & Tipton, by Charles A. Ditsch, and Leland Featherman, Phoenix, for appellee and cross-appellant.

Samuel Langerman, Phoenix, for amicus curiae American Trial Lawyers Assn.

McFARLAND, Vice Chief Justice:

Chester A. Chenoweth has petitioned for and been granted review of the decision of the Arizona Court of Appeals in the case of Sandoval v. Chenoweth, 2 Ariz.App. 553, 410 P.2d 671.

For purposes of convenience plaintiff in the trial court, Chester A. Chenoweth, will be hereinafter referred to as plaintiff; the defendant, Oscar Sandoval, as defendant; and defendant's insurer, Financial Indemnity Co., will be referred to as Financial.

This action arises out of an automobile accident which occurred on August 22, 1960, in which it is alleged that defendant ran a red light and collided with plaintiff's automobile, causing plaintiff injury and damages in the amount of $35,000. Defendant notified his insurer, Financial, of the accident, and thereafter, plaintiff and Financial's adjusters negotiated at length in order to effect a settlement of plaintiff's claims. The attempts at settlement failed, and plaintiff brought suit. Defendant was served with process on April 4th, 1961, but did not notify Financial. On May 10, 1961, default judgment was entered against defendant in the sum of $35,000. A writ of garnishment in this amount was served on Financial on July 27, 1961. Although it is alleged that plaintiff told the adjusters he was going to sue, it is undisputed that Financial had no notice of the filing of the suit until after the default judgment was entered.

In the subsequent garnishment action Financial defended on the ground that defendant had breached the conditions of his policy in that he had failed to notify Financial of the filing of the suit, and therefore Financial owed defendant nothing.

The policy condition provided as follows:

" * * * If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representatives."

On cross motions for summary judgment the trial court granted summary judgment in favor of plaintiff in the amount of $5,-000. The trial court then granted summary judgment against plaintiff and in favor of Financial for all sums in excess of $5,000. In so doing, the court must necessarily have determined that the "policy defense" of

failure of notice of suit is not available to an insurer, under the Financial Responsibility Law, A.R.S. § 28–1101, et seq.

As both plaintiff and Financial have appealed from the Superior Court, we will treat Financial's appeal first, and deal with plaintiff's cross appeal later in this opinion.

Financial contends the trial court erred for the reason that the provisions of the Arizona Financial Responsibility Act are not applicable in the instant case.

The holding of the trial court has been buttressed by the subsequent decision and opinion of this court in Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145, wherein we held in a unanimous opinion that the "omnibus clause" is a part of every motor vehicle liability policy, by whatever name it may be called. In so holding we refused to consider distinctions between the terms "motor vehicle liability policy," "automobile liability policy" or "policy of insurance." The Mayflower case was founded on our holding in Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136, wherein we said:

"The Financial Responsibility Act has for its principal purpose the protection of the public using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons." 93 Ariz. at 280, 380 P.2d at 140

In Schecter v. Killingsworth, supra, we further stated that the primary purpose of the Financial Responsibility Act was "the providing of security against uncompensated damages arising from operation of motor vehicles on our highways." The foregoing statements were quoted and relied upon in Jenkins v. Mayflower, supra, and the two cases, when read in conjunction, fully express the public policy of this state in regard to judicial implementation of the Financial Responsibility Act. The holding of Jenkins v. Mayflower that a restrictive endorsement negating coverage could not be relied on by the insurer where it conflicted with the coverage required by the omnibus clause read into *every* automobile

liability policy by the Financial Responsibility Act, was reiterated by this court in Pacific Indemnity Co. v. Hamman Wholesale Lumber and Supply Co., Inc., 95 Ariz. 362, 390 P.2d 897.

Counsel for Financial ask that we overrule Jenkins v. Mayflower. The cases cited do not differ in reason nor authority from those cited and considered by this court in arriving at our decision. Jenkins v. Mayflower, supra, 93 Ariz. at 290, 380 P.2d at 147. Our decision in that case was arrived at after mature consideration. The result is just and equitable, as it alleviates to a large degree the suffering and injustice rendered an innocent injured party by the assertion of an insurer's defense based on a technicality over which he had no control.

Counsel and amicus urge in behalf of plaintiff that several attempts have been made to change the effect of the Mayflower decision by legislative enactment and that the Legislature has refused to act. We do not feel this to be grounds for either reaffirming or overruling Mayflower. However, we do recognize that if the law is to be changed, the objectives of the Financial Responsibility Law as interpreted in Schecter v. Killingsworth and Mayflower should be changed by the Legislature.

The Supreme Court of California in Interinsurance Exchange Of Automobile Club of Southern California v. Ohio Casualty Insurance Company, 58 Cal.2d 142, 23 Cal.Rptr. 592, 373 P.2d 640, subsequent to a legislative amendment making their financial responsibility law even more akin to that of this state, re-affirmed the rule of public policy announced in Wildman v. Government Employees' Ins. Co., 48 Cal.2d 31, 307 P.2d 359, cited in Mayflower. In doing so, the court stated:

" * * * [T]he *entire* automobile financial responsibility law must be liberally construed to foster its main objective of giving 'monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' To hold that the 1957 legislation abrogated the rule of Wildman, would violate this rule of liberal construction and would be contrary to the trend indicated in recent legislative and judicial determinations involving the Vehicle Code. * * *" 373 P.2d at 646.

In the absence of any showing of injustice or a legislative change of public policy, we find no reason to depart from the established law of the state and the doctrine of stare decisis. The social and economic problems arising from the ever mounting casualty rate on our streets and highways are even more persuasive today than at the time of the enactment of the financial responsibility law or the decision in Mayflower.

Our holding in Jenkins v. Mayflower Insurance Exchange is reaffirmed.

■ Under the rule expressed in Mayflower, the provisions of the Financial Responsibility Law are applicable to the facts of the instant case whether or not the policy would be technically classed as a "certified" policy. A.R.S. § 28–1170 expressly states as follows:

"F. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

"1. The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute when injury or damage covered by the motor vehicle liability policy occurs. The policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage, and no statement made by the insured or on his behalf *and no violation of the policy shall defeat or void the policy.*" (Emphasis added.)

In the light of the Mayflower decision, the foregoing statutory provision is controlling in the instant case.

Financial contends, however, that the effect of this statute, when applied to the facts of the instant case, will result in a denial of due process violative of Art. II, § 4, of the Arizona Constitution, A.R.S. and of the Fourteenth Amendment of the Constitution of the United States of America. The elements of due process in regard to notice and right to a hearing have previously been set forth by this court in Phoenix Metals Corporation v. Roth, 79 Ariz. 106, 284 P.2d 645, as follows:

> " 'The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause. * * * ' " 79 Ariz. at 109, 284 P.2d at 647

In the instant case, Financial was notified of the claim against them but was not notified that suit had been filed against defendant. Default judgment was entered on May 10th, 1961, and counsel for Financial first learned of the default judgment on or about May 29th, 1961, when Financial's adjusters forwarded a letter from plaintiff's counsel.

It was not until August 9, 1961, more than nine weeks after being informed of the suit, that a motion was made to set aside the default. The motion to set aside was denied on September 27, 1961. After Financial was notified of the default judgment, but before it filed the motion to have it set aside, garnishment proceedings were instituted against Financial.

■ It seems to be settled that after recovering a judgment against an insured under a liability policy, the injured third person may collect such judgment by instituting garnishment proceedings against the liability insurer. Michel v. American Fire & Casualty Co., 5 Cir., 82 F.2d 583; Brandon v. St. Paul Mercury Indemnity Co., 132 Kan. 68, 294 P. 881, 83 A.L.R. 673; 22 Appleman, Insurance Law and Practice, § 14565. Financial points out that in this situation the rendition of judgment against

the insured serves a dual purpose; that it not only creates a judgment debt in favor of the injured party, but at the same time it creates a debt under the insurance contract between the judgment debtor and his insurer; and that for this reason, the insurer should have a right to defend against the default judgment.

■ Financial's remedy, however, is not to attempt to relitigate the facts of the original suit in the subsequent garnishment action, as this is merely an ancillary proceeding to subject the indebtedness to satisfaction of a judgment. Weir v. Galbraith, 92 Ariz. 279, 376 P.2d 396. If the insurance company can show statutory grounds to set aside the default, its remedy is to move to have the default judgment set aside, as was done in the instant case.

The grounds on which a judgment may be set aside are set forth in Rule 60(c), Arizona Rules of Civil Procedure, 16 A.R.S.

■ At the time that Financial filed its motion to set aside the default judgment, Rule 60(c) was more restrictive than in its present form. However, it did set forth grounds under which the court, in its discretion, might have granted relief from the judgment. The motion to set aside a default judgment must be made within a reasonable time. While the court did not state its reasons for denying the motion, the record shows the motion was not made until nine weeks after Financial was informed of the default judgment. The trial court could have found that it was not made within a reasonable time. Under these facts we cannot say the trial court abused its discretion in failing to grant the motion. Postal Benefit Insurance Co. v. Johnson, 64 Ariz. 25, 165 P.2d 173; Lewis v. Cunningham, 10 Ariz. 158, 85 P. 244; Rule 60(c), Arizona Rules of Civil Procedure, 16 A.R.S.

■ In light of the foregoing facts, Financial has not been deprived of its constitutional right of due process of law, as the Financial Responsibility Law was in effect at the time of the issuance of this

policy, and its counterpart in California had been interpreted in accord with our subsequent decision in Mayflower. Wildman v. Government Employees Ins. Co., supra.

## PLAINTIFF'S CROSS-APPEAL

Plaintiff contends the trial court erred in granting summary judgment in favor of Financial and against plaintiff for all sums in excess of five thousand dollars.

This judgment was based on the trial court's interpretation of A.R.S. § 28–1170, subsections B and G. At the time of the lower court's determination, these sections provided as follows:

"B. The owner's policy of liability insurance must comply with the following requirements:

\* \* \* \* \* \*

"2. It shall insure the person named therein and any other person, as insured, using the motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle or motor vehicles within the United States or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle as follows:

"(a) Five thousand dollars because of bodily injury to or death of one person in any one accident.

\* \* \* \* \* \*

"(c) One thousand dollars because of injury to or destruction of property of others in any one accident.

\* \* \* \* \* \*

"G. A policy which grants the coverage required for a motor vehicle liability policy may also grant lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and the excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants the ex-cess or additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this section."

This court has been previously inclined to follow California in its judicial interpretation of the Financial Responsibility Act. The courts of that state have previously passed on this in Globe Indemnity Co. v. Universal Underwriters Insurance Co., 201 Cal.App.2d 9, 20 Cal.Rptr. 73, wherein it was said:

"Since appellants fail to sustain their first major position that the policy did not cover the permissive user we turn to the second basic argument that the trial court erred in affording Moore coverage to the full limits of the policy. We believe that Moore assumes the status of an insured under the policy and hence receives its whole protection. Moore thus becomes an additional insured under the policy and obtains its protection as much as the 'partner, employee, director or stockholder' who is specifically named in the policy's 'Definition of Insured.' Since the limitations of paragraph 8 do not affect the situation, and since the policy itself contains no differentiations as to those insured or the amounts of the protection, we find no basis for curtailment of Moore's coverage.

"Despite appellants' criticism of the Supreme Court's language in Continental Cas. Co. v. Phoenix Const. Co. (1956) 46 Cal.2d 423, 296 P.2d 801, 57 A.L.R.2d 914, we believe it is both apt and pertinent to this case. There the court held that one Mason, the driver of the equipment involved was a ' "managing employee" ' (p. 433, 296 P.2d p. 807) within the omnibus clause of the policy. The policy contained this provision: ' "Financial Responsibility Laws. Such insurance as is afforded by this policy shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable *with respect to any such liability* arising out of the existence, own-

ership, maintenance or use of any automobile during the policy period, to the extent of the coverage and limits of liability [as] required by such law." (Italics added.)' (P. 433, 296 P.2d p. 807.) The court held that compliance with Vehicle Code section 415 did not work a reduction of the limits of the policy to the minimum which the section permitted. The court said 'Here we have the seemingly explicit provision of section 415 of the Vehicle Code that "A 'motor vehicle liability policy,' as used in this code means a policy * * *, which policy shall meet the following requirements: * * * (2) Such policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle * * * with the * * * permission of said assured," and coupled with that are the provisions of the Highway Carriers Act * * * declaring that the coverage provided "shall comply with the provisions of the motor vehicle financial responsibility law * * * which shall be applicable with respect to *any such liability* arising out of the existence * * * or use of any automobile * * * to the extent of the coverage and limits of liability required by such law." (Italics added.) That language cannot properly be construed to mean minimum coverage or minimum limits; rather, it must be interpreted as providing full or maximum coverage in both aspects insofar as encompassed by the law and not exceeding *the clear limitations of the contract.*' (P. 438, 296 P.2d p. 810.)

"As respondent points out, since the Universal policy did not set up different provisions for omnibus insureds, the fact that Mason, 'unlike Moore, became an omnibus insured through an interpretation of a policy definition' does not differentiate the cases. The point is that once Moore became an insured by operation of law, and once Mason became an assured by application of the policy, they both were protected to the full limits of the policy. * * * "

The Ninth Circuit of the United States Court of Appeals in Truck Insurance Exchange v. American Surety Co. of New York, 9 Cir., 338 F.2d 811, has succinctly stated the California view on this point as follows:

"1. Appellant contends that since its liability arises by operation of law, due to the requirements of § 16451 of the California Vehicle Code, and that since that section *only requires coverage* to the extent of $10,000, its liability should be limited to that amount.

"California law, as evidence by Globe Indemnity Co. v. Universal Underwriters Ins. Co., 201 Cal.App.2d 9, 20 Cal.Rptr. 73 (Dist.Ct.App.1962), is to the contrary."

In Mayflower we refused to consider artful distinctions between the terms "motor vehicle liability policy," "automobile liability policy," or "policy of insurance." The same reasoning applies in regard to the limitation of liability under A.R.S. § 28–1170, subsection G, supra. There being no distinction between the terms, the second sentence of subsection G is ineffectual to limit coverage to the minimum amount required. Therefore, the trial court erred in granting summary judgment in favor of Financial for all sums in excess of five thousand dollars.

For the foregoing reasons, the judgment of the lower court is affirmed in part, reversed in part, and remanded with directions to enter judgment for the plaintiff in the amount of the debt which is owing to defendant under the policy. The decision of the Court of Appeals is vacated.

STRUCKMEYER, UDALL and LOCKWOOD, JJ., concur.

BERNSTEIN, Chief Justice (dissenting).

In our recent decision of Carpenter v. Superior Court, 101 Ariz. 565, 422 P.2d 129, I dissented from the majority of the court

because of my belief that a reexamination by this court of the continuing validity of our holding in the case of Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 had been improperly avoided. It was my opinion then, as it is now, that the Mayflower case had been erroneously decided and that it should be overruled. Carpenter v. Superior Court, supra, 101 Ariz. p. 572, 422 P.2d 129 (dissenting opinion).

In the present cause the majority now has taken the opportunity to reconsider the Mayflower decision, and has decided it should be reaffirmed. For reasons set forth in my dissent in Carpenter, I cannot concur with the majority's continuing support of Mayflower.

The majority has chosen to again term as "artful" those distinctions which lay at the very heart of A.R.S. Title 28, Chapter 7, Articles 3 and 4, and in this manner, to again ignore the master plan of the Financial Responsibility Law as well as obvious legislative intent. In doing so, the majority risks hypocrisy in suggesting that a change of the law as enunciated in Mayflower is a matter for the legislature rather than the judiciary. For as I stated in Carpenter, the failure to exercise necessary judicial restraint in the face of a strictly legislative matter constituted the condemning defect in our Mayflower decision. The doctrine of judicial restraint in such matters is a constant limitation on the power of the courts and is not to be stored in legal moth balls for selective use only. I cannot agree that it would be a violation of this doctrine to now overrule a case in which the principle had been previously violated. To the contrary, it simply would be a matter of correcting a past wrong.

Further, I must disagree with the majority's conclusion that the trial court could properly find that Financial Indemnity Company had failed to make a motion to set aside the default judgment within a "reasonable" time. The majority apparently overlooks the fact that the Mayflower decision, which permits a judicial "policy" consideration to vary the plain import of the Financial Responsibility Law, was not handed down until approximately two years after the default judgment presently in question was granted (i. e. March, 1963). Therefore, in 1961, Financial Indemnity Company had every reason to believe that its contractual policy defense constituted a complete defense in any ensuing garnishment proceeding brought against them by the plaintiff and that as a result there was no reason for Financial Indemnity Company to feel a need to set aside the default judgment. To say that our Mayflower decision was a surprise to both the members of the legal profession and the insurance companies of this state is, perhaps, to put it mildly.

It is my opinion that the Mayflower decision should be overruled and that judgment should be entered in favor of Financial Indemnity Company.