526 P.2d 1085

Pauline WAUNEKA, Individually and on behalf of all others similarly situated, Appellant,

v.

David H. CAMPBELL, Superintendent, Motor Vehicle Division, and Mrs. G. Kobzeff, Director of the Financial Responsibility Service, Appellees.

No. 1 CA–CIV 2387.

Court of Appeals of Arizona, Division 1.

Sept. 24, 1974.

288

Richard B. Collins, Window Rock, Robert N. Hilgendorf, Chinle, for appellant.

N. Warner Lee, Atty. Gen., Gary K. Nelson, Former Atty. Gen. by Donald O. Loeb, Asst. Atty. Gen., Phoenix, for appellees.

## OPINION

HOWARD, Judge.

This case requires us to determine the applicability of the Arizona Motor Vehicle Safety Responsibility Act, A.R.S., Title 28, Chapter 7, to automobile accidents between Indians on the Navajo Reservation. This is an appeal from a Maricopa County Superior Court order finding that since the Navajo Tribal Code expressly requires that all Navajo Indians residing on the Navajo Reservation in Arizona obtain an Arizona Driver's license and since the Arizona Safety Responsibility Act is an integral part of any privilege to hold such a license, those who apply for a license are bound by the laws governing revocation of the license. Our examination of the constitutional mandates leads us to conclude that the State lacks jurisdiction to enforce the Arizona Motor Vehicle Safety Responsibility Act in this case.

The particular situations involved concern automobile accidents on the Navajo Reservation in Arizona between enrolled members of the Navajo Tribe. After each of these accidents the appellee attempted to enforce various sections of the Safety Responsibility Act such as the requirement that security be posted to avoid suspension of appellant's driver's license and registration. We must determine the extent of the State's power under these circumstances.

The framework upon which our answer must be built was recently considered by the United States Supreme Court in the context of liability to pay state income tax. In McClanahan v. Arizona Tax Commission, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed. 2d 129 (1973), the Court used the Indian sovereignty doctrine as a foundation for its opinion:

"The Indian sovereignty doctrine is relevant, then, not because it provides a

definitive resolution of the issues in this suit, but because it provides a backdrop against which the applicable treaties and federal statutes must be read. It must always be remembered that the various Indian tribes were once independent and sovereign nations, and that their claim to sovereignty long predates that of our own Government. Indians today are American citizens. They have the right to vote, to use state courts, and they receive some state services. But it is nonetheless still true, as it was in the last century, that '[t]he relation of the Indian tribes living within the borders of the United States . . . [is] an anomalous one and of a complex character. . . . They were, and always have been regarded as having a semi-independent position when they preserved their tribal relations; not as States, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people, with the power of regulating their internal and social relations, and thus far not brought under the laws of the Union or of the State within whose limits they resided.' United States v. Kagama, 118 U.S. [375], 381–382, 6 S.Ct. [1109], 1112 [30 L.Ed. 228 (1886)]." [footnotes omitted] 411 U.S. at 172–173, 93 S.Ct. at 1263.

We turn now, as did the Supreme Court in *McClanahan,* to the relevant treaties and statutes and read them with this tradition of sovereignty in mind. The treaty the United States government entered into with the Navajo Nation in 1868 precludes extension of state law to Indians and the Navajo Reservation. McClanahan v. Arizona Tax Commission, supra; Warren Trading Post Co. v. Arizona Tax Commission, 380 U.S. 685, 687, 689, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965); Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959).

■ However, state law can be extended to Indians on the Reservation, as indicated in *McClanahan,* 411 U.S. at 177–178, 93 S.Ct. at 1265:

". . . it should be noted that Congress has now provided a method whereby States may assume jurisdiction over reservation Indians. Title 25 U.S.C. § 1322(a) [25 USCS § 1322(a), 25 U.S.C.A. § 1322(a)] grants the consent of the United States to States wishing to assume criminal and civil jurisdiction over reservation Indians, and 25 U.S.C. § 1324 [25 USCS § 1324, 25 U.S.C.A. § 1324] confers upon the States the right to disregard enabling acts which limit their authority over such Indians. But the Act expressly provides that the State must act 'with the consent of the tribe occupying the particular Indian country,' 25 U.S.C. § 1322(a) [25 USCS § 1322(a), 25 U.S.C.A. § 1322(a)], and must 'appropriately [amend its] constitution or statutes.' 25 U.S.C. § 1324 [25 USCS § 1324, 25 U.S.C.A. § 1324]. Once again, the Act cannot be read as expressly conferring tax immunity upon Indians. But we cannot believe that Congress would have required the consent of the Indians affected and the amendment of those state constitutions which prohibit the assumption of jurisdiction if the States were free to accomplish the same goal unilaterally by simple legislative enactment. See Kennerly v. District Court, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971)." [footnotes omitted]

■ It is clear that Arizona cannot enforce its motor vehicle laws, A.R.S. Title 28, against Indians on the Navajo Reservation absent some form of valid consent. Even were we to construe Title 14, Section 602 of the Navajo Tribal Code as authorizing complete state regulation of motor vehicle registration on the Navajo Reservation (a very dubious interpretation, *see, infra*), the State's authority would still be vacuous because there has been no appropriate amendment to the Arizona constitution or statutes. Kennerly v. District Court, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed. 2d 507 (1971).

The Arizona Supreme Court ruled against state jurisdiction over a traffic offense by an Indian in Application of Denetclaw, 83 Ariz. 299, 320 P.2d 697 (1958). The Attorney General has twice opined that Indians cannot be compelled to obtain a state motor vehicle registration for vehicles owned and operated on the Reservation. Op.Atty.Gen. Nos. 69–11(R–62) (1969) and 58–71 (1958).

■ A second way to test the validity of state attempts to regulate involving Indians is "whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." Williams v. Lee, 358 U.S. 217, 220, 79 S. Ct. 269, 271, 3 L.Ed.2d 251 (1959). While, in McClanahan, the Court seems to limit this test to cases involving non-Indians, even if this standard were applied, the State would still be without jurisdiction. *See generally,* Note, Sovereignty, Citizenship and the Indian, 15 Arizona L.Rev. 973, 974 (1973). This conclusion is supported by examination of the Arizona Safety Responsibility Act itself. Such laws are enacted pursuant to the *police power.* Schechter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136, 140–141 (1963). The Navajo Tribe has similar authority, so that enforcing the Act against reservation Indians ". . . infringe on the right of the Indians to govern themselves." Williams v. Lee, supra. Further, the Act involves assertion of jurisdiction in ways expressly ruled illegal. It provides for a quasi-judicial administrative hearing followed by judicial review of the administrative decision in state courts. A.R.S. § 28–1122. Yet in Williams v. Lee, supra, the United States Supreme Court held that Arizona courts lack civil jurisdiction over Indians for causes of action arising on the Reservation. The Act also carries criminal sanctions for non-compliance. A.R.S. § 28–1203. Yet such assertion of criminal jurisdiction would be contrary to the Supreme Court's decision in Application of Denetclaw, supra.

■ Appellees contend that prior to the enactment of 25 U.S.C. § 1323(b) the Navajo Nation voluntarily relinquished to the three states within which the Navajo Nation is located, the time-consuming task of controlling and regulating the issuance and withdrawal of licenses of Navajo drivers. It is not at all clear that this means that on-reservation jurisdiction was relinquished. Title 14 of the Navajo Tribal Code contains the tribe's motor vehicle laws. It requires that Navajos obtain a state driver's license, 14 N.T.C. §§ 601–604. Section 601 is definitional. Section 602 provides:

"Every Indian operating a motor vehicle on the Navajo Reservation shall be the holder of a valid driver's license issued by the state in which such individual resides."

Section 603 requires that a Navajo driver have a license in his possession when he is driving and section 604 makes violation of these provisions an offense under Tribal law.

■ By enacting the licensing provision, the Tribe requires reservation Indians to apply to the state Motor Vehicle Department for a driver's license. They must meet the state qualifications for the license. It does not follow, however, that the tribe has consented to enforcement on the Reservation of all eleven chapters of A.R.S. Title 28. The drivers licensing statutes, A.R.S. Title 28, Chapter 4, and the Safety Responsibility Act, A.R.S. Title 28, Chapter 7, are separate and distinct pieces of legislation designed to accomplish different objectives. The basic purpose of the drivers licensing statutes is ". . . to insure a minimum of competence and skill on the part of drivers of motor vehicles generally . . ." 7 Am.Jur.2d Automobiles and Highway Traffic § 93. As to the Safety Responsibility Act, "the sole emphasis in the Act is one of providing leverage for the collection of damages from drivers who either admit that they are at fault or are adjudged negligent." Perez v.

Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). See also Schechter v. Killingsworth, supra.

Thus although license suspension may result from failure to comply with the Safety Responsibility Act, the threat of suspension is used as a sanction to accomplish an objective unrelated to the purpose of the licensing statute. And suspension is not the only sanction under the Act, the other being criminal penalties. A.R.S. § 28–1203.

The distinctness of the two statutes is further underscored by the wholly separate license suspension procedure under the drivers licensing law. A.R.S. § 28–446. This procedure considerably overlaps the procedures under the Safety Responsibility Act, calling for separate determination of some of the same issues. Note, e. g., A.R. S. § 28–446.A. 2.

The Tribe in requiring its members who drive on the Reservation to be licensed by the state in which they live insures that those driving on the Reservation have demonstrated certain minimal skill and knowledge relative to the operation of motor vehicles. The tribal driver's license statute has not ceded either civil or criminal jurisdiction over Reservation events to Arizona courts or administrative agencies. A reading of Kennerly v. District Court of Montana, 400 U.S. 423, 91 S.Ct. 480, 27 L. Ed.2d 507 (1971) makes it clear that in the case at bench the State's attempt to enforce any part of Title 28 on the Reservation would be invalid for failure to comply with federal law. 14 N.T.C. § 603 can be valid only insofar as it adopts the state requirements as tribal law, violations of which are tribal law and punishable in the tribal courts.

We therefore reverse and remand the cause with directions to enter an appropriate judgment consistent with this opinion.

HATHAWAY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by Judges of Division Two as authorized by A.R.S. § 12–120(E).