641 P.2d 1305

**Alfred P. CHASE and Sylvia M. Chase, husband and wife, Plaintiffs-Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant-Appellee.**

**No. 1 CA–CIV 5143.**

Court of Appeals of Arizona, Division 1.

Jan. 21, 1982.

Ryley, Carlock & Ralston by Paul M. B. de Blank, Phoenix, for plaintiffs-appellants.

Hofmann, Salcito & Stevens, P. A. by Leroy W. Hofmann, Phoenix, for defendant-appellee.

## OPINION

CORCORAN, Judge.

The primary issue on this appeal from summary judgment is whether an automobile insurance policy provision which excludes uninsured motorist coverage for injuries suffered off the public roads caused by

off-road vehicles is invalid pursuant to Arizona's Uninsured Motorist Act (hereinafter UMA), A.R.S. § 20–259.01 and Uniform Motor Vehicle Safety Responsibility Act (hereinafter SRA), A.R.S. §§ 28–1101 to 1225. The SRA is generally referred to as the Financial Responsibility Act.

This lawsuit was commenced as a result of injuries received by appellant Alfred P. Chase on April 18, 1977. Mr. Chase and Sylvia M. Chase, his wife, were inside the garage of a model home in Sun City, Arizona, when a golf cart driven by persons unknown crashed into, and partially through, the garage door striking Mr. Chase. The golf cart was owned by Del E. Webb Development Corporation (Del Webb) which carried comprehensive automobile liability insurance. Del Webb's insurer, Fireman's Fund Insurance Company, denied coverage under its motor vehicle liability policy for the operators of the golf cart.

Mr. Chase brought suit against his own insurance carrier State Farm Mutual Automobile Insurance Company (State Farm) for benefits under the uninsured motor vehicle coverage of his motor vehicle liability policy.[1] This policy contains the following language:

Uninsured Motor Vehicle—means:

(1) a land motor vehicle with respect to the ownership, maintenance or use of which there is . . . a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies that there is any coverage thereunder

. . . .

but the term *uninsured motor vehicle* shall not include:

. . . .

[A] land motor vehicle designed for use principally off public roads except while being used on public roads. . . .

(emphasis in original.)

After cross motions for summary judgment were filed and argued, the trial court found that there were no issues of material

---

1. Appellants also brought a separate lawsuit against Del Webb alleging that Del Webb was negligent by permitting unskilled operators to drive golf carts around its model home display.

fact and concluded as a matter of law that the golf cart was an "uninsured motor vehicle" because of the denial of coverage by Fireman's Fund. However, the trial court also concluded that the contractual exclusion of off-road accidents involving off-road vehicles was not in derogation of Arizona's financial responsibility laws. Accordingly, judgment was granted in favor of State Farm. This appeal followed.

 Appellants have appealed from that portion of the judgment upholding the validity of the exclusion. Our opinion is therefore addressed to this narrow issue.[2] We affirm the judgment of the trial court.

All automobile liability policies issued in Arizona must provide coverage for the benefit of insureds who are legally entitled to recover damages from owners or operators of uninsured motor vehicles pursuant to the UMA.[3] Appellants contend that by excluding from coverage injuries which an insured receives from an off-road vehicle when that vehicle is operated off the public roads, State Farm is not providing the minimum insurance coverage mandated by the UMA. Appellants concede that the UMA, which is included in the insurance code does not define "uninsured motor vehicle" but contend that the definitions contained in the

transportation code (of which the SRA is a part) are applicable. *See* A.R.S. §§ 28–101 to 2322.

 Appellants argue the applicability of the definitional section of Title 28 on the basis that the UMA and SRA are complementary provisions. In adopting the SRA, the legislature intended to provide leverage for the collection of damages from financially irresponsible persons. *Schecter v. Killingsworth*, 93 Ariz. 273, 380 P.2d 136 (1963); *Wauneka v. Campbell*, 22 Ariz.App. 287, 526 P.2d 1085 (1974). It did so by requiring parties involved in accidents to post a bond, certificate of deposit or certificate of insurance sufficient to satisfy any potential judgment, and if they failed to do so, they would lose their privilege of operating a motor vehicle on Arizona's highways. A.R.S. §§ 28–1142 and 1167.

 The UMA was intended to close the gap in protection offered by the SRA by requiring insurance companies issuing automobile liability policies to include coverage for injuries suffered by their insureds for damages caused by uninsured motorists. *Kraft v. Allstate Insurance Co.*, 6 Ariz.App. 276, 431 P.2d 917 (1967). Appellants argue that since these acts were designed to operate together, their provisions should be read in pari materia.

**2.** At the trial court level appellants argued that a fact issue existed concerning whether a golf cart in Sun City, Arizona is designed primarily for off-road use. This argument has not been reasserted on appeal. At the appellate level, there is an initial presumption that a judgment is correct. *Feuchter v. Bazurto*, 22 Ariz.App. 427, 528 P.2d 178 (1974); *Mozes v. Daru*, 4 Ariz.App. 385, 420 P.2d 957 (1966), and it is incumbent upon the appellant to point out wherein the trial court erred. *Joseph v. Markowitz*, 27 Ariz.App. 122, 551 P.2d 571 (1976). It is a function of this court to determine appeals based upon issues presented to it for review, and while in an appeal from summary judgment we will view the record in the light most favorable to the appellant, we do not extend our review beyond the scope of the issues fairly presented.

**3.** A.R.S. § 20–259.01. Coverage to include protection from operators of uninsured motor vehicles; right of rejection; supplemental or renewal policy
A. On and after January 1, 1966, no automobile liability or motor vehicle liability policy insuring against loss resulting from liability im-

posed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in § 28–1142, under provisions filed with and approved by the insurance director, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. For the purposes of the coverage provided for pursuant to this section, "uninsured motor vehicles," subject to the terms and conditions of such coverage, includes any insured motor vehicle where the liability insurer thereof is unable to make payment on the liability of its insured, within the limits of the coverage, because of insolvency.

Appellants' argument is two-fold:

(1) Article 4, chapter 6 of Title 28 (A.R.S. §§ 28–661 to 675) requires reporting of accidents involving the operation of motor vehicles both on and off the public highways. Failure by a motorist to comply with the provisions of article 4 subjects the motorist to the sanctions and requirements of the SRA. Appellants argue that the off-road application of article 4 also applies to the SRA. Appellants then argue that if the off-road application is read into the SRA, it must also be read into the UMA.

(2) The definitional section of Title 28 (A.R.S. § 28–101) applies to define the term "motor vehicle" which is used in, but is not defined in the UMA.

We will address each argument in turn.

## I. THE SAFETY RESPONSIBILITY ACT IS TO BE READ IN PARI MATERIA WITH THE UNINSURED MOTORIST ACT

■ Appellants correctly note that article 4 of chapter 6 under Title 28 (relating to accident reporting requirements) is a specific exception to the chapter's general rule that the state's traffic laws apply only to vehicles operated on the public highways.

> The provisions of this chapter [chapter 6] relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except:
>
> . . . .
>
> The provisions of articles 4 [reporting of accidents] and 5 [negligent homicide, driving while intoxicated and reckless driving] of this chapter shall apply upon highways and elsewhere throughout the state.

A.R.S. § 28–621.

The SRA is chapter 7. Its provisions come into play only upon receipt of a report of an accident occurring on or off the public highways as required by chapter 6, article 4, A.R.S. § 28–667.

The SRA also comes into play upon notice of a failure by an owner or operator to satisfy a judgment against him arising out of his operation of a motor vehicle. A.R.S.

§ 28–1161. Upon such notice, the Act requires the owner or operator to provide proof of financial responsibility including filing a certificate of insurance, a bond or a certificate of deposit. A.R.S. § 28–1167.

Appellants argue that the scope of coverage required by the SRA, A.R.S. § 28–1170(B), is not limited to accidents occurring on the public highway. Further, they argue, since the off-road applicability of the accident-reporting statutes extends, under the first step of their argument, to the SRA, such a policy *must* provide coverage for accidents occurring both on and off the public roadway.

Appellants then argue that because the SRA requires irresponsible owners or operators to purchase insurance covering liability incurred both on and off the public highway, to allow a policy exclusion of off-road accidents under the uninsured motorist provisions of such a policy abrogates the public policy underlying both the SRA and the UMA.

The fundamental rule of statutory construction, to which all others are subordinate is that the courts must ascertain and give effect to the intent of the legislature. A.R.S. § 1–211; *Mardian Construction Co. v. Superior Court*, 113 Ariz. 489, 557 P.2d 526 (1976).

It is an equally well-settled rule of statutory construction that statutes will be read in pari materia if they relate to the same subject matter or have the same general purpose, the underlying objective being to carry out the intent of the legislature. *See State ex rel. Larson v. Farley*, 106 Ariz. 119, 471 P.2d 731 (1970); *State v. Mackey*, 15 Ariz.App. 417, 489 P.2d 80 (1971).

■ The fundamental purpose of the SRA is the "providing of security against uncompensated damages arising from operation of motor vehicles on our highways." *Schecter v. Killingsworth*, 93 Ariz. at 285, 380 P.2d at 144; *Transportation Insurance Co. v. Wade*, 106 Ariz. 269, 475 P.2d 253 (1970).

To close the gap left in the protection of motorists by the large number of drivers

with neither insurance nor sufficient personal resources with which to respond to damage claims, the legislature enacted the UMA.

■ The evident intent of the legislature and identity of subject matter as to the two acts compel our conclusion that the SRA and UMA must be read in pari materia.

■ Such a construction, however, does not compel the conclusion that State Farm's exclusion of coverage of off-road accidents involving off-road vehicles under its uninsured motorist provisions violates Arizona's public policy as evidenced by the legislature's enactment of the SRA and the UMA.

The SRA is silent as to any requirement that insurance policies obtained to provide proof of financial responsibility also cover off-road accidents. Nor is the scope of the SRA (chapter 7) broadened to include off-road accidents by the off-road extension of provisions which are limited by their terms solely to article 4 (reporting accidents) and article 5 (negligent homicide, driving while intoxicated and reckless driving) of chapter 6.

We are unable to find any legislative intent as evidenced by a close reading of the statutes that (1) the SRA requires that insurance policies obtained pursuant to A.R.S. § 28–1168 cover liability incurred in off-road accidents or (2) the off-road exception of the accident-reporting statutes, A.R.S. §§ 28–661 to 675, was intended to apply to the SRA by implication or upon public policy grounds.

## II. APPLICABILITY AND EFFECT OF THE TITLE 28 DEFINITION OF MOTOR VEHICLE AS TO THE UNINSURED MOTORIST ACT

The SRA is part of Title 28, and contains a definitional section (A.R.S. § 28–101) which defines "motor vehicle." The UMA

uses, but does not define the term "motor vehicle." Appellants contend that the application of the definition of the term "motor vehicle" in A.R.S. § 28–101 to the UMA means that a golf cart is a motor vehicle and that the exclusionary provision contained in State Farm's policy is invalid. Without deciding whether A.R.S. § 28–101 is applicable to the UMA we find that even if it were applicable, the result argued by appellants does not necessarily follow.

The word "vehicle" as used in Title 28, means:

[A] device in, upon or by which any person or property is or may be transported upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks.

A.R.S. § 28–101(56).

A "motor vehicle" is defined as:

[A]ny self-propelled vehicle but for the purposes of the laws relating to the imposition of a tax upon motor vehicle fuel and the term means any vehicle operated upon the highways of this state which is propelled by the use of motor vehicle fuel.[4]

A.R.S. § 28–101(25).

The definitional section of Title 28 was adopted from the Uniform Vehicle Code and Model Traffic Ordinance and it mirrors the uniform act. Title 28 and the uniform act contain identical definitions of "vehicle." Unlike Title 28, the uniform act's definition of "motor vehicle" does not refer to a motor vehicle fuel tax and in addition to self-propelled vehicles it includes vehicles which are propelled by overhead electric power.[5]

We point out the similarities between Title 28 and the uniform act because these definitions have been adopted in numerous other states. While we find no Arizona

4. Appellants argue that although an electric golf cart does not use motor vehicle fuel and, therefore, is not "a motor vehicle" within the meaning of article 1, chapter 9 [motor vehicle fuel tax] of Title 28, it is a motor vehicle for all other purposes of that title.

5. The Uniform Vehicle Code and Model Traffic Ordinance, § 1–134 (Rev. 1968) defined motor vehicle as

Every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails.

decisions concerning whether a golf cart is a motor vehicle for purposes of these definitions, this precise issue has been addressed by another state.

In *Nepstad v. Randall*, 82 S.D. 615, 152 N.W.2d 383 (S.Dak.1967), the South Dakota Supreme Court was asked to determine whether South Dakota's guest statute, which precluded a claim by a guest of the owner or operator of a "motor vehicle," was applicable where an individual brought suit against the owner of a golf cart which overturned on a golf course. In deciding whether a golf cart was a "motor vehicle" for purposes of the guest statute, the court applied definitions contained in chapter 44.-03 of the South Dakota Code of 1939. These definitions of "vehicle" and "motor vehicle" are virtually identical to those contained in A.R.S. § 28–101.[6] In interpreting these provisions the South Dakota Supreme Court held as follows:

> If a motor driven golf-cart were being operated upon a public highway for the purpose of transporting persons or property, it would undoubtedly be considered a "motor vehicle" within these statutory provisions. They contain references to vehicles by which any person or property "may be" transported or drawn upon a public highway. The provisions of S.D.C. 44.03 are regulatory in nature governing the use of vehicles upon public highways and the conduct of owners and drivers of vehicles operated thereon. The language in question refers to the type or class of self-propelled vehicles primarily designed for transportation of persons or property on public highways. We agree with the holding of the Supreme Court of Wisconsin in *Nelson v. Ohio Casualty Insurance*

*Co.*, 29 Wis.2d 315, 139 N.W.2d 33, to the effect that a highway safety statute was not applicable to a class of motor propelled vehicles so designed that they might never be used for transporting persons or property upon a public highway and that such a motor vehicle is not within the terms of the statute unless being operated upon a public highway at the time of an accident. We hold that a motor driven golf cart while being operated on a golf course is not a "motor vehicle" within the meaning of the guest statute.

82 S.D. at 619, 152 N.W.2d at 385–386.

While the Supreme Court of South Dakota did not consider the issue of whether a golf cart was a motor vehicle in connection with an uninsured motorist statute, it did interpret the language which appellants argue is applicable and rejected the conclusion that this language necessarily includes any self-propelled vehicle. We agree. Further, we have found that other jurisdictions have applied virtually identical definitions to their uninsured motorist statutes and rejected the interpretation urged by appellants.

The Michigan Court of Appeals has considered this issue on several occasions with respect to accidents involving snowmobiles and bulldozers. In *Woods v. Progressive Mutual Insurance Co.*, 15 Mich.App. 335, 166 N.W.2d 613 (1968) the court held invalid an automobile liability policy which excluded coverage under its uninsured motorist provisions for injuries suffered in a highway collision with a bulldozer. The court held that for these purposes a "bulldozer" was a "motor vehicle." [7]

---

**6.** S.D.C. § 44–0301(1) defined "vehicle" as:
> [E]very device in, upon, or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks; provided that for the purposes of this chapter, a bicycle or a ridden animal shall be deemed a vehicle.

Subsection two of the same section defined "motor vehicle" as:
> [E]very vehicle, as herein defined, which is self-propelled.

**7.** At the time of this decision the pertinent Michigan statutes, Mich.Comp. Laws Ann. § 257.33 [Mich.Stat.Ann. § 9.1833 (1960)] defined "motor vehicle" as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from over-head trolley wires, but not operated upon rails." Mich.Comp. Laws Ann. § 257.79 [Mich. Stat.Ann. § 9.1879 (1960)] defined "vehicle" as:
> [E]very device in, upon or by which any person or property is or may be transported or drawn upon a highway, excepting devices

In *Detroit Automobile Inter-Insurance Exchange v. Spafford*, 76 Mich.App. 85, 255 N.W.2d 780 (1977), the court clarified its holding in *Woods*, and stated that a snowmobile, while being operated off the road, was *not* a motor vehicle under the terms of an uninsured motorist provision of an automobile insurance policy. The court further held that the exclusionary provision was not inconsistent with Michigan's statute requiring insurance companies to provide uninsured motorists' coverage for their insured. In reaching its decision, the court stated:

> *Woods* is not inconsistent with our holding. In that case, the bulldozer was being operated on the highway. Since it is patently ridiculous that automobile insurance would cover injuries caused by equipment designed for off-the-road operation while actually off the road, it is not surprising that the *Woods'* court did not make explicit what must have been an underlying assumption. The ... exclusion is valid in so far as it is not inconsistent with M.C.L.A. § 500.3010; M.S.A. § 24.13010; i.e., when the ... vehicle is being operated *off the road.*

(emphasis added.) 76 Mich.App. at 89, 255 N.W.2d at 782. The Michigan Court of Appeals reaffirmed its decisions in *Woods* and *Spafford* in *Rooney v. Detroit Automobile Inter-Insurance Exchange*, 94 Mich. App. 448, 288 N.W.2d 445 (1979). In *Rooney*, the court held that a snowmobile operated upon a highway was an "uninsured vehicle" for purposes of uninsured motor vehicle coverage. The distinction made by the Michigan courts is therefore whether the off-road vehicle is involved in an accident *on* the highways. *See also, Autry v. Aetna Life and Casualty Insurance Co.*, 35 N.C.App. 628, 242 S.E.2d 172 (1978). *See generally* A. Widiss, *A Guide to Uninsured Motorist Coverage*, § 2.30 (Supp.1980).

We recognize that on its face A.R.S. § 20–259.01 does not state that coverage is limited to accidents occurring on public roads. However, absent a definition of

"uninsured motor vehicle" in the statute, we must look elsewhere to determine the scope of coverage which insurance companies must provide.

We note that when the UMA was amended in 1972 it was part of an act entitled

### AN ACT

RELATING TO INSURANCE AND MOTOR VEHICLES; *DEFINING "MOTOR VEHICLE" FOR INSURANCE PURPOSES*; PROVIDING AUTOMOBILE OR MOTOR VEHICLE LIABILITY POLICY CONTAIN UNINSURED MOTORIST COVERAGE; INCREASING FINANCIAL RESPONSIBILITY REQUIREMENTS; PRESCRIBING FURTHER LIMITATIONS ON AND EXCEPTIONS TO CANCELLATION OR NONRENEWAL OF MOTOR VEHICLE INSURANCE; PROVIDING LIABILITY IMMUNITY FOR DIRECTOR OF INSURANCE AND INSURERS; AMENDING SECTIONS 20–259.01, 20–1631 AND 20–1632, ARIZONA REVISED STATUTES; AMENDING TITLE 20, CHAPTER 6, ARTICLE 11, ARIZONA REVISED STATUTES, BY ADDING SECTION 20–1634 AND AMENDING SECTIONS 28–324, 28–1102, 28–1142, 28–1164, 28–1170, 28–1174 AND 40–611, ARIZONA REVISED STATUTES.

(emphasis added). Laws 1972, Ch. 157.

The title of the bill appears to describe a definition applicable for all insurance purposes. However, this definition was part of the amendment to A.R.S. § 20–1631 which defines a motor vehicle as follows: "In this article ... 'motor vehicle' means a licensed, land, motor driven vehicle ...."[8] While this definition is limited by its terms to chapter 6 of Title 20 which does not include the UMA, it is indicative that the legislature's primary concern in the general area of automobile insurance was the protection

moved by human power or used exclusively upon stationary rails or tracks.

8. A.R.S. § 20–1631 is part of chapter 6, Title 20 which regulates the cancellation or non-renewal of automobile insurance.

of motorists using the public highways.[9] Likewise, we note that on several occasions Arizona courts have described the purpose of the uninsured motorist statute as being the protection of motorists on the public highways. *See Farmer v. Killingsworth,* 102 Ariz. 44, 424 P.2d 172 (1967); *Schecter v. Killingsworth,* supra; *Sampson v. Transport Indemnity Co.,* 1 Ariz.App. 529, 405 P.2d 467 (1965).[10]

With this in mind, we find the following analysis of the interrelationship of state financial responsibility statutes and uninsured motorist statutes by the North Carolina Court of Appeals in *Autry,* supra, to be persuasive:

> Construing "uninsured motor vehicle" in light of the foregoing, we must conclude that the term is intended to include motor vehicles which should be insured under the Act but are not, and motor vehicles which, though not subject to compulsory insurance under the Act, are at some time operated on the public highways. Only in these instances is the uninsured motorists provision serving its intended purpose of complementing the original Act and furthering the financial protection accorded thereby to persons injured by motor vehicles *on the public highways.* This purpose would not be served by interpreting the uninsured motorists provision so as to cover accidents involving motor vehicles not subject to compulsory insurance and which occur on private property. Such an interpretation would result in absolute financial protection against injury by motor vehicle, a concept neither contemplated nor intended by the original Act.

(emphasis in original.) 35 N.C.App. at 633, 242 S.E.2d at 175.

Because coverage for operation of a golf cart resulting in an accident off the public highway is neither required nor prohibited by the Arizona UMA, the exclusion of such off-road accidents is a matter of contract between the insurer and the insured. *See Balestrieri v. Hartford Accident and Indemnity Insurance Co.,* 112 Ariz. 160, 540 P.2d 126 (1975); *Lawrence v. Beneficial Fire and Casualty Insurance Co.,* 8 Ariz.App. 155, 444 P.2d 446 (1968).

We conclude that the exclusion of coverage by State Farm set forth in the policy for injuries caused by off-road vehicles when the injury occurs off the public highways is not in conflict with the mandates of the Uninsured Motorist Act or the Safety Responsibility Act.

Judgment affirmed.

CONTRERAS, P. J., and OGG, J., concur.

**9.** Only land vehicles used on the public highways must be licensed. *See* A.R.S. § 28–302.

**10.** We do not find this to be the only purpose of the act and do not imply that an "uninsured motor vehicle" for purposes of the UMA is intended to exclude coverage for injuries caused by vehicles designed primarily for highway use when those vehicles are operated *off the public highway.* Neither do we imply that an insurance policy may not by its own terms include coverage for off-road accidents involving off-road vehicles. *See Thompson v. Government Employees Ins. Co.,* 122 Ariz. 18, 592 P.2d 1284 (App.1979).