OPINION
CORCORAN, Judge.
This appeal involves the question of whether the decedent, Michael Gibbs, was covered under the uninsured motorist provision of either of two forms of the same insurance policy. Appellant State Farm Mutual Automobile Insurance Company (State Farm), has conceded that insurance coverage is available if applicable under either its policy form 9803.2 or form 9803.3.
The cross-appeal involves the question of whether either of the policy forms provide liability coverage for the decedent when he was killed while a passenger in his own vehicle which was driven by another person, Peter Sanchez.
The declaratory judgment action upon which this appeal and cross-appeal is based arises from an underlying tort suit involving an automobile accident which occurred on April 23, 1978. ' At the time of the accident, the decedent was a passenger in a 1977 Ford Ranger pickup truck which was registered in his name. The truck was being driven by Sanchez, a defendant in the trial court action. The vehicle was involved in a one-car accident on Interstate 8 in California. Gibbs died as a result of the injuries he sustained in that accident.
Appellee Jean Gibbs as personal representative of the estate of Michael Gibbs and appellees Clyde Gibbs and Jean Gibbs, husband and wife and surviving parents of Michael Gibbs, filed a negligence action against Sanchez. Sanchez requested that State Farm defend him and provide coverage for the lawsuit.
State Farm declined to represent Sanchez and instituted this declaratory judgment action to determine whether coverage was extended to Sanchez in the negligence action. Appellees filed an answer to State Farm’s complaint for declaratory relief wherein they alleged that the policy provided liability insurance coverage for the death of Michael Gibbs (decedent) or, in the alternative, that the uninsured motorist provisions of the policy covered the accident.
State Farm filed a motion for summary judgment alleging that the insurance policy did not provide coverage as a matter of law.
The trial court granted State Farm’s motion for summary judgment concerning State Farm’s obligation to extend coverage to Sanchez and its obligation to pay any damages to its own insured under the personal liability portions of the policy. The trial court granted appellee’s cross-motion for summary judgment on the uninsured motorist issue, thereby extending uninsured motorist coverage to decedent. State Farm filed a timely appeal challenging the partial summary judgment granted *276 in favor of appellees on the uninsured motorist issue. Appellees filed a cross-appeal challenging the summary judgment granted in favor of State Farm on the issue of personal liability coverage. This court has jurisdiction pursuant to A.R.S. § 12-2101(B) and (D).

Personal Liability Coverage

At the time of the accident and for sometime prior thereto, decedent was the named insured under State Farm policy 1410-160-B22-03E. This policy as originally written was State Farm form 9803.2. However, effective April 1, 1978, State Farm changed the language of all its automobile liability policies in force so as to make the policy provisions “easier to read.” This “plain language policy,” State Farm form 9803.3, superseded the old policy form 9803.2 held by the decedent and was effective on the date of the accident. The question of whether the decedent was aware of this change is not relevant to this appeal because State Farm has admitted that if coverage is found to exist under either policy form, there will be coverage for the accident in which Michael Gibbs was killed.
We will review the summary judgments entered by the trial court in light of State Farm’s plain language policy, form 9803.3. In so doing, we note that there is no practical difference between the substance of the policy terms under either form. However, we will later address a claim that an exclusion contained in the easy read policy is ambiguous.
The Ford pickup owned by decedent was the vehicle described in the policy as the automobile covered by the policy. Decedent was specifically excluded from liability coverage under the policy. The exclusion reads:
When [Liability] Coverage A Does Not Apply
THERE IS NO COVERAGE:
2. FOR ANY BODILY INJURY TO:
c. YOU.
The policy defines the term “YOU” as follows:
You or Your — means the named insured or named insureds shown on the declaration page.
The named insured under the policy was the decedent. This particular provision is specifically designed to exclude coverage for bodily injury to the named insured in return for a lower premium rate.
It is State Farm’s position that there is no bodily injury coverage on the ground that the policy excluded coverage for bodily injuries to the named insured. State Farm argues that this exclusion extends to situations where the heirs of the named insured bring suit against a permissive user who was operating the insured’s vehicle at the time of the accident causing the named insured’s death. In other words, its argument is that there is no coverage for Sanchez in the wrongful death suit brought by Mrs. Gibbs, the mother of the decedent, because there would be no coverage for decedent had he survived. We agree.
Ever since the decision of our Supreme Court in New York Underwriters Ins. Co. v. Superior Court, 104 Ariz. 544, 456 P.2d 914 (1969), it has been undisputed that the owner of an automobile may contract with his insurance carrier to exclude insurance coverage for bodily injury to himself. The court in New York Underwriters held:
... [T]he question is whether or not the statute [Arizona financial responsibility act] is intended to restrict the privilege of an individual to contract with his insurance carrier to exclude his own personal recovery under the terms of the policy in the event of his own injury. We read nothing in the statutes which state such a restriction nor do we find ourselves compelled by public policy to so construe this statute.
We hold that the exclusion cited above as limited to the named insured himself is not contradictory to the provisions of *277 A.R.S. § 28-1170 and is not illegal or void.
104 Ariz. at 545, 456 P.2d at 915. The New York Underwriters decision clearly established that in Arizona an exclusion for bodily injury to the named insured is valid and does not violate the financial responsibility act. This position was reaffirmed by our Supreme Court in State Farm Mut. Automobile Ins. Co. v. Transport Indem. Co., 109 Ariz. 56, 505 P.2d 227 (1973).
In Schwab v. State Farm Fire & Casualty Co., 27 Ariz.App. 747, 558 P.2d 942 (1976), division two of this court was presented with a factual situation identical to that which is before us. In that case, the named insured under the policy issued by State Farm was killed while she was a passenger in her own vehicle which was driven by a permissive user. The surviving child of the named insured brought suit against the permissive user. State Farm denied coverage, and a declaratory judgment action followed. The plaintiff in Schwab argued that the financial responsibility act prevented the application of the exclusion to the injury of the named insured under the factual situation presented. The court rejected the argument relying on New York Underwriters, supra. The court upheld the exclusion and found that it did not violate public policy of Arizona as set forth in the financial responsibility act.
In the present case, the decedent was in the exact same position as the decedent in Schwab. He was a passenger in his own truck while it was being driven by a permissive user. Decedent Gibbs had willingly elected to exclude himself from coverage under his own policy for his bodily injury in exchange for a lower premium payment. Nothing in the law of Arizona, or the policy behind that law, is offended by permitting a party to contract to so exclude himself. Therefore, we find that the trial court properly found that there was no personal liability coverage for decedent under coverage A of the subject policy.
Appellees urge this court to find that both State Farm policy form 9803.2 and form 9803.3 are ambiguous. We have carefully reviewed these forms and find no ambiguity under the bodily injury sections of the policy forms.

Uninsured Motorist Coverage

The threshold question presented by State Farm’s appeal is whether the decedent’s truck was an uninsured motor vehicle at the time of the accident. To make this determination, we must review the provisions of the decedent’s policy. The relevant portions of that policy are set forth in “SECTION III — UNINSURED MOTORIST VEHICLE — COVERAGE U.” In that section the State Farm policy states:
We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle. Uninsured Motor Vehicle — means:
1. a land motor vehicle not insured or bonded for bodily injury liability at the time of the accident; ...
(Emphasis added in last clause.) The policy continues:
An uninsured motor vehicle does not include a land motor vehicle:
1. insured under the liability coverage of this policy;
It is State Farm’s contention that the Ford pickup does not qualify as an uninsured motor vehicle under the express terms of the decedent’s policy because the policy specifically excludes from the definition of an uninsured motor vehicle a vehicle which is insured under the liability portions of “this” policy. State Farm’s argument is apparently predicated on the fact that the policy does provide bodily injury coverage under different circumstances for individuals other than the decedent. We find this argument unpersuasive in light of our Supreme Court’s ruling in State Farm *278 Mut. Automobile Ins. Co. v. Herron, 123 Ariz. 315, 599 P.2d 768 (1979).
In Herron the plaintiff was injured while a passenger in his father’s truck, due to his brother’s negligent driving. The plaintiff, his brother and father, were all residents of the same household and had separate policies on their respective vehicles with State Farm. By stipulation, it was agreed that there was no bodily injury liability coverage under any of the three policies due to an “intrafamilial liability exclusion.” Because of this exclusion, our Supreme Court found that the father’s truck was an “uninsured motor vehicle” with respect to the excluded individuals. The court explained:
We agree with appellant’s reasoning that the father’s vehicle should be considered an “uninsured motor vehicle.” It must be remembered that appellant [plaintiff] could not reach bodily injury liability coverage under either the father’s or brother’s policies because of the clauses excluding liability among residents of the same household. The purpose of the Uninsured Motorist Statute is to provide for those situations in which negligent parties have no liability coverage under which injured parties may recover.
123 Ariz. at 317, 599 P.2d at 770. The court concluded that where no liability coverage is in fact available, as where an exclusion prevents recovery under the bodily injury liability section of the policy, the vehicle in question must be considered “uninsured” for purposes of effectuating the legislative intent under the uninsured motorist act.
The import of Herron is that the State Farm policy in that case excluded the named insured from bodily injury coverage, while providing such coverage to most other people. Thus, the court’s holding is directed at those cases where an insurance policy does provide bodily injury liability coverage under different circumstances for individuals other than the named insured plaintiff but where no liability coverage is in fact available to a named insured under his own policy because of a policy exclusion. Applying the general principles established in Herron to this case, we find that the vehicle in which the decedent was killed was an “uninsured motor vehicle.”
Anticipating this court’s determination that the Ford truck was an uninsured motor vehicle at the time of the accident, State Farm argues that the decedent was specifically excluded from uninsured motorist coverage under the policy. The exclusion reads:
When Coverage U Does Not Apply
THERE IS NO COVERAGE:
2. FOR BODILY INJURY TO AN INSURED:
a. WHILE OCCUPYING, ...
A MOTOR VEHICLE OWNED BY YOU ... IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY.
Relying on this exclusionary language, State Farm urges this court to find as a general principle of law that an insured may further exclude himself from coverage for his own injuries under the uninsured motorist provision of his insurance policy and to specifically give effect to such an exclusion in the decedent’s policy in this case.
While it is well-established law in Arizona that this type of exclusion in the personal liability section of an insurance policy does not violate public policy as established by the financial responsibility act, Transport Indemnity Co., supra; New York Underwriters, supra; Schwab, supra; no Arizona opinion deals with the precise issue raised by State Farm where the exclusion appears under the uninsured motorist section of an insurance contract. This issue must be resolved before proceeding to evaluate the specific wording of the exclusion.
Under the provisions of Arizona’s financial responsibility act, A.R.S. § 28-1101 et seq., all automobile liability policies issued in this state must contain minimum statutorily prescribed policy limits for bodily injury liability coverage. A.R.S. § 28- *279 1170(B)(2). The uninsured motorist act, A.R.S. § 20-259.01, is a more recent development than the financial responsibility act. See State Farm Mut. Automobile Ins. Co. v. Eden, 136 Ariz. 460, 666 P.2d 1069 (1983). Beginning in 1965, the insurer had the duty to call attention of uninsured motorist coverage to its named insured, who had the right to reject that coverage. Laws 1965, Ch. 34, § 1. At the time of the accident, that coverage was required. Laws 1972, Ch. 157, § 1. The uninsured motorist act as it has been amended is still mandatory in terms. Laws 1981, Ch. 224, § 1; Laws 1982, Ch. 298, § 1.
However, the act cannot be read in a vacuum. The uninsured motorist act and the financial responsibility act, A.R.S. §§ 28-1101 to 1225, must be read in pari materia. Chase v. State Farm Mut. Automobile Ins. Co., 131 Ariz. 461, 465, 641 P.2d 1305, 1309 (App.1982). Although the legislature has modified the uninsured motorist act so that by its terms it no longer provides for the right to reject such coverage, it would be incongruous to conclude that the public policy behind the financial responsibility act is not offended by permitting an insured to voluntarily exclude himself from coverage under the liability portion of his policy, but that the same public policy requires the insurer to pay benefits for the exact same injuries under the uninsured motorist provision where the insured has equally expressly agreed to be excluded under that provision. As State Farm points out, such a result would fly in the face of reason and permit an absurd anomaly in the law.
We conclude that it is not a violation of public policy under the uninsured motorist act for the insured to elect to purchase uninsured motorist coverage which would protect permissive users of and passengers in the insured vehicle but which would exclude the named insured.

Ambiguity

Appellee argues that the wording of the uninsured motorist exclusion is ambiguous and as such should not be given effect.
Provisions of insurance policies are to be construed in a manner according to their plan and ordinary language. Sparks v. Republic Nat’l Life Ins. Co., 132 Ariz. 529, 647 P.2d 1127 (1982). Where the language employed is unclear and can be reasonably construed in more than one sense, an ambiguity exists in a policy, the language should be examined from the viewpoint of one not trained in law or in the insurance business. Sparks, supra; Ranger Ins. Co. v. Lamppa, 115 Ariz. 124, 563 P.2d 923 (App.1977). This rule applies with even greater force where the ambiguity appears in an exclusionary clause. State Farm Mut. Automobile Ins. Co. v. Paynter, 122 Ariz. 198, 204, 593 P.2d 948, 954 (App.1979). With this in mind, we are of the opinion that the uninsured motorist policy exclusion before us is susceptible to two meanings, and thus, is ambiguous.
The policy exclusion reads in relevant part as follows:
There is no [uninsured motorist] coverage ... for bodily injury to an insured ... while occupying ... a motor vehicle owned by you [insured] ... if it is not insured for this coverage under this policy-
(Emphasis added.) The insured’s vehicle was insured with uninsured motorist coverage. We recognize that the legal thrust of the policy language was intended to provide that a named insured is not covered for injuries he himself receives while driving in his own automobile when those injuries are caused by an uninsured motorist. However, from the standpoint of the average layman who is untrained in either law or insurance, Sparks, supra, the emphasized language could reasonably be understood to mean that the named insured is only excluded from coverage if his policy does not provide for uninsured motorist coverage as a whole. Since the policy did provide uninsured coverage for the vehicle, then the exclusion would not apply and therefore the insured would be covered.
The judgment of the trial court is affirmed.
KLEIN SCHMIDT and CONTRERAS, JJ., concur.