717 P.2d 909

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**Plaintiff/Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANY; Deanne Sasselli; Howard McNeil and Carmen McNeil, husband and wife; and Frank Cummings Ford, Inc., Defendants/Appellees.**

No. 2 CA–CIV 5128.

Court of Appeals of Arizona,
Division 2.

April 2, 1985.

Fish, Duffield, Miller, Young, Adamson & Alfred, P.C. by Arthur H. Miller and K. Alexander Hobson, Tucson, for plaintiff/appellant.

Chandler, Tullar, Udall & Redhair by D.B. Udall, Tucson, for defendant/appellee Fireman's Fund.

Russo, Cox, Dickerson, Butler & Russo, P.C. by Karl MacOmber, Tucson, for defendant/appellee Sasselli.

Richard A. Block, Tucson, for defendants/appellees McNeil.

## OPINION

HATHAWAY, Judge.

Can an insurance company exclude coverage to its named insured when the named insured is operating, with permission, an automobile owned by a person engaged in the automobile business? We answer that it cannot.

This case involves a question of insurance coverage for Deanne Sasselli, who was involved in an automobile accident that occurred on or about March 2, 1983, in the vicinity of Nogales, Sonora. Her insurer, the appellant State Farm Mutual Automobile Insurance Company (State Farm), filed a declaratory judgment action requesting that the trial court declare the respective rights of the parties under policies issued by State Farm and Fireman's Fund Insurance Company (Fireman's Fund). The court ruled that the policy issued by State Farm provides primary coverage, up to its policy limits, under its liability and medical pay coverages.

State Farm appeals and sets forth a narrative statement of the stipulated facts in appellant's opening brief. Those facts disclose that in March 1983, Deanne Sasselli was a self-employed real estate broker making her living in Nogales, Arizona. She owned two vehicles, a 1979 Mustang and a 1980 Ford Bronco, each insured under separate policies with State Farm.

In her business as an independent real estate broker, Sasselli sold real estate owned by the Tubac Valley Country Club. On March 1, 1983, she volunteered to drive a van owned by James Stevens, managing partner of Tubac Valley Country Club, into Nogales, Arizona, from Tubac, in order to have a front-end alignment performed on the van at Frank Cummings Ford in Nogales, 27 miles from Tubac. Frank Cummings Ford is an automobile dealer with automobile repair and maintenance facilities.

Sasselli had no ownership interest in the van. She usually used her Bronco when showing real estate to prospective customers, but on occasion, when showing Tubac Valley Country Club homes, and when she had more than four people to transport, she had been given use of the van. She told Mr. Stevens that "the tires needed realigning" on the van. Since Stevens did not have time to take it in for realignment, she volunteered. She delivered the van to Frank Cummings Ford at about 5 p.m. on March 1, 1983. It was to be ready to be picked up by sometime late Wednesday, March 2, or early Thursday, March 3. Sasselli would not have paid for the servicing of the van, nor was she to be compensated for taking it in for servicing. She did not consider herself to be a "customer" of Frank Cummings Ford in driving the van in for servicing.

Having delivered the van to Frank Cummings Ford, Sasselli asked for a car and was given permission for the unrestricted use, without charge, of a Pontiac owned by Frank Cummings Ford while the maintenance was being performed on the van. On March 2, while driving the Pontiac on a personal shopping trip in Nogales, Sonora, with Carmen McNeil as a passenger, Sasselli collided with a truck a short distance south of the United States-Mexico border.

Both Sasselli and McNeil received personal injuries as a result of the collision.

On the date of the accident, there was in effect an "auto business" policy of liability insurance issued by Fireman's Fund to Frank Cummings Ford, and the Pontiac driven by Sasselli was a "covered auto" as that term is used in the Fireman's Fund policy. The State Farm policy covering Sasselli is an owner's policy and provides coverage for her 1979 Mustang and for her use of other cars, including a temporary substitute car subject, however, to an exclusion under Section I—Liability—Coverage A, at page 6, which provides:

"3. Temporary Substitute Car, Non-Owned Car, Trailer.

If a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle* has other vehicle liability coverage on it, then this coverage is excess. THIS COVERAGE SHALL NOT APPLY:

a. IF THE VEHICLE IS OWNED BY ANY *PERSON* OR ORGANIZATION IN A *CAR BUSINESS*; AND

b. IF THE *INSURED* OR THE OWNER HAS OTHER LIABILITY COVERAGE WHICH APPLIES IN WHOLE OR IN PART AS PRIMARY, EXCESS OR CONTINGENT COVERAGE." (Emphasis in original)

Appellees contend that the exclusion is void as against the public policy of the State of Arizona as expressed by the legislature in the Financial Responsibility Act. We agree. A.R.S. § 28–1170.01 and A.R.S. § 20–1123.01, which are identical, provide:

"A. If two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, and one of such policies affords coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing motor vehicles, both of the following shall be conclusively presumed:

1. If, at the time of loss, the motor vehicle is being operated by any person engaged in any of such businesses, or by his employee or agent, the insurance afforded by the policy issued to the person engaged in such business shall be primary, and the insurance afforded by any other policy shall be excess.

2. If, at the time of loss, the motor vehicle is being operated by any person other than as described in paragraph 1, the insurance afforded by the policy issued to any person engaged in any of such business[es] shall be excess over all other insurance available to such operator as a named insured or otherwise.

B. Except as provided in subsection A of this section, if two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.

C. The presumptions stated in subsection A of this section may be modified or amended only by written agreement signed by all insurers who have issued a policy or policies applicable to a loss described in such subsection and all named insureds under such policies. Added by Laws 1978, Ch. 183, § 1."

As applied to the facts of this case, appellant contends this provision means that the Fireman's Fund policy is valid and collectible automobile liability insurance and the State Farm policy is not. This is so, it argues, because State Farm specifically excludes the application of its owner's policy coverage to vehicles owned by any person or organization in the car business. The Fireman's Fund policy, in contrast, specifically insures vehicles owned by a person or organization engaged in the car business (Frank Cummings Ford). In appellant's view, there is nothing in the language of the statute to suggest that it is against public policy for an insurance company to

exclude coverage of certain types of vehicles from an owner's policy.

A.R.S. § 20–1123.01 and 28–1170.01 can reasonably be interpreted as embodying an intent of the legislature to supply a "tiebreaker" when both an owner's and a dealer's policy seem to apply to an auto accident. Nothing has been supplied to this court to demonstrate that the legislature intended, in the passing of these statutes, to eliminate the ability of an insurance company to contract independently with the insured concerning the scope of coverage.

■ Even the "reasonable expectation of the parties" line of cases admits that an explicit clause which limits or affects coverage "will be enforced when the reasons for its existence are thereby served and will not be applied when to do so would be to defeat the basic intent of the parties in entering into the insurance transaction." *Zuckerman v. Transamerica Insurance Company*, 133 Ariz. 139, 146, 650 P.2d 441, 448 (1982). There is no indication that the expectation of the insured, Ms. Sasselli, is defeated by excluding car business vehicles, since there is nothing in the record to suggest she had any expectations in this regard. This court is not asked to interpret a policy dispute between insurer and insured, as in *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Company*, 140 Ariz. 383, 682 P.2d 388 (1984); *Sparks v. Republic National Life Insurance Company*, 132 Ariz. 529, 647 P.2d 1127 (1982); *Zuckerman v. Transamerica Insurance Company*, supra. Rather, one insurance company complains of a contractual agreement entered into by another insurance company. In this battle of equals, the reasonable expectation argument is inapplicable. And invocation of public policy will fail without a clear demonstration of how public policy is offended.

■ If State Farm's interpretation of our Financial Responsibility Act, particularly §§ 20–1123.01 and 28–1170.01, is brought to its logical conclusion, however, the Sasselli policy must conform to the statutory provisions and thus State Farm's coverage becomes primary under the statute and Fireman's is excess. State Farm asserts that the Sasselli policy simply does not afford valid and collectible insurance on a car business vehicle. Yet State Farm cannot mean that all car business vehicles are excluded, even if no other insurance is available to pay in the event of an accident. This would be in direct violation of the Financial Responsibility Act. "The fundamental purpose of the SRA [Financial Responsibility Act] is the 'providing of security against uncompensated damages arising from operation of motor vehicles on our highways.'" *Chase v. State Farm Mutual Automobile Insurance Company*, 131 Ariz. 461, 464, 641 P.2d 1305, 1308 (App. 1982), quoting *Schecter v. Killingsworth*, 93 Ariz. 273, 285, 380 P.2d 136, 144 (1963). State Farm must mean that the exclusion is invalid in any situation where there is no other insurance available. But if State Farm means that, then it has acknowledged that the Sasselli policy offers valid and collectible insurance in at least a limited instance. Insurance that is valid and collectible at all must logically be deemed valid and collectible for purposes of §§ 20–1123.01 and 28–1170.01. And under subsection (C), State Farm cannot unilaterally modify subsection (A), which specifically provides that insurance coverage from a car business is excess over insurance coverage of a non-car business driver of a dealership car. Modification requires a written agreement "signed by all insurers ... and all named insureds under such policies." A.R.S. § 28–1170.01(C). Since no such agreement by State Farm and Fireman's and by Sasselli and Frank Cummings Ford is in evidence, the State Farm exclusion is void and unenforceable. A.R.S. § 28–1170.01(A)(2) governs.

Affirmed.

BIRDSALL, C.J., and HOWARD, J., concur.